In the Matter of WILLIAM J. CHARLES, Appellant, v HENRY DIAMOND, as New York State Commissioner of Environmental Conservation, et al., Respondents.

Fourth Department, April 23, 1975

*Oot, Greene, Setright, Hershdorfer & Sharpe (Victor J. Ciabotti of counsel)*, for appellant.

*Louis J. Lefkowitz, Attorney-General (Martin H. Schulman* and *Ruth Kessler Toch* of counsel), for Henry Diamond, respondent.

*Eli Gingold (Hugh C. Gregg, II,* of counsel), for William Harris, respondent.

*Alexander J. Hersha (Roger Scott* of counsel), for Village of Camillus, respondent.

CARDAMONE, J. In this article 78 proceeding petitioner al-

leges that his property has been taken without just compensation by reason of denial of his request to develop it. He claims that in the event that sewers are not approved for his property and he is thereby prevented from building apartments on his property, he will be damaged in the amount of $100,000. On a previous appeal from a dismissal of this same article 78 petition we reversed and held that petitioner had stated a cause of action for article 78 relief and a cause of action on constitutional grounds for a taking without just compensation conditioned on the unavailability of the article 78 relief *(Matter of Charles v Diamond,* 42 AD2d 232, 235). On remand from the previous appeal, Special Term directed the respondent Village of Camillus (Onondaga County) to proceed immediately to correct deficiencies in its sewage system, directed respondent State Commissioner of Environmental Conservation to issue a permit to petitioner which would allow him to connect to the village sewage system only upon proof that the village had satisfactorily corrected the deficiencies as ordered and dismissed petitioner's cause of action for $100,000 in money damages. Petitioner has appealed, contending essentially that he should have been permitted to adjudicate the constitutional claim for money damages immediately. The resolution of this issue requires a brief resume of its factual background.

Petitioner, William J. Charles, is the owner of real property located in the Village of Camillus and planned to construct on it three apartment buildings consisting of 36 units. On May 9, 1972 the Village Board authorized issuance of a building permit. The State Department of Environmental Conservation (DEC), however, informed petitioner on May 22, 1972 that his application to tie into the village sewage system would not be approved until "the Village undertakes a program to correct the deficiencies of their sewage system." The DEC also directed the Onondaga County Health Department not to approve any extension of, or connection to, the existing system until it is improved. Thereafter, in June, 1972 petitioner commenced the present article 78 proceeding seeking the following relief: 1. An order that all respondents approve sewer connections to his property. 2. An order that the village take appropriate steps so that the State and county officials would approve. 3. $50,000 for consequential damages incurred, and 4. If a sewer connection was not approved and the apartment construction was precluded, $100,000 for the appro-

priation of petitioner's property. The New York State Commissioner of Environmental Conservation (Commissioner) and the Deputy Commissioner of the Onondaga County Department of Health were joined with the village as corespondents. As noted, Special Term granted the respondent's motion to dismiss for failure to state a cause of action and this court reversed and remanded (42 AD2d 232).

Upon remand, respondents served answers to the petition which reveal that in July, 1966 the village had submitted to a consent decree of the Commissioner of the State Department of Health concerning its sewage system. That decree, however, was held in abeyance on April 5, 1968 pending completion of a relevant portion of an Onondaga County comprehensive sewage study. On January 27, 1972 the Department of Environmental Conservation (successor to the Department of Health) informed the village that it had to undertake an immediate program to minimize pollution pending implementation of a comprehensive sewage project in the Camillus area. After commencement of the present article 78 proceeding the village submitted to a new DEC consent order effective October 4, 1972 which modified the original 1966 consent decree. This new consent order noted that the 1966 decree "contained certain requirements that were impossible of performance" and specified a timetable of interim steps for the village to improve the existing sewage system pending completion of a comprehensive sewage plan for Nine Mile Creek Drainage Basin. On July 12, 1973 the village agreed to a modification of the consent order which extended the village's time to perform certain requirements until January 1, 1974.

The answers of the Commissioner and the village served subsequent to this court's prior decision further reveal that the Commissioner has undertaken substantial action to effectuate improvement of the village's sewage system. First, the original 1966 consent order was modified in October, 1972 to require a less ambitious, short-term program by the village to improve the sewage system. Second, within three weeks after this court's prior decision the Commissioner initiated an administrative proceeding on July 26, 1973 "to set and establish a definite date on or before which all unlawful discharges of sewage or wastes" by the village shall be abated. The outcome of this proceeding does not appear in the record before us. Some light may be shed on this from oral argument where it appeared that the village now intends to join a comprehensive

countywide sewer system being planned in Onondaga County. It has given no factual indication other than conclusory allegations that it has undertaken to improve its existing sewage system in compliance with the administrative consent order. Despite the legal obligation imposed by the consent order upon the village to improve its sewage system, it has attempted unsuccessfully to prohibit administrative enforcement of it *(Village of Camillus v Diamond,* 45 AD2d 982). Its own current estimated timetable for pollution abatement is 1977, although in its most recent agreement with the State the village agreed that it would be in compliance no later than January 1, 1974. It remains evident, therefore, that although the village has been under a consent order for nearly nine years (since 1966) to modify its public sewer system to meet minimum State standards, it has not yet done so and its future timetable for accomplishing this goal remains, at best, indefinite and hazy.

Upon these facts we have concluded that article 78 relief is to all intents and purposes ineffectual and unavailing to petitioner and that, consistent with our prior decision in this case, he should, therefore, be immediately permitted to go to trial on his damage claim.

A fundamental principle of our jurisprudence is that unreasonable governmental regulation under the police powers may amount to an unconstitutional taking of private property, requiring just compensation (U. S. Const., 5th and 14th Amdts.: N. Y. Const., art. I, § 7; *Pennsylvania Coal Co. v Mahon,* 260 US 393, 415; *Arverne Bay Constr. Co. v Thatcher,* 278 NY 222, 231). Where regulation unconstitutionally deprives an individual of his property rights, the courts must enforce the constitutional guarantees or our government of limited powers will be unrestrained *(Mugler v Kansas,* 123 US 623, 661; *People ex rel. New York Cent. & Hudson Riv. R. R. Co. v Priest,* 206 NY 274, 288–291).

No fixed rule, however, dictates where proper regulation under the police power ends and a taking begins. A comparison of the values before and after the impact of regulation is relevant *(Goldblatt v Hempstead,* 369 US 590, 594). Although loss of the most profitable land-use is insufficient to constitute a taking *(United States v Central Eureka Min. Co.,* 357 US 155, 168), deprivation of all reasonable land uses is economically confiscatory *(Matter of Fulling v Palumbo,* 21 NY2d 30, 35). Equally significant are the relative necessity of the regula-

tion and the duration of its restrictions on property rights *(Matter of Belle Harbor Realty Corp. v Kerr,* 35 NY2d 507, 511–512; *Matter of Golden v Planning Bd. of Town of Ramapo,* 30 NY2d 359, 380–382; *Arverne Bay Constr. Co. v Thatcher, supra).* Therefore, we believe that a property owner who has been denied an existing governmental service proves a constitutional taking when he demonstrates that such denial is (1) economically confiscatory in effect, (2) unreasonable in terms of necessity, and (3) indefinite in duration (cf. *Arverne Bay Constr. Co. v Thatcher, supra; Forster v Scott,* 136 NY 577, 584; 2 Nichols, Eminent Domain [3d ed], § 6.3; Harris, Environmental Regulations, Zoning, and Withheld Municipal Services: Takings of Property by Multi-Government Action, 25 U Fla L Rev 635, 682). Petitioner should be given an opportunity to prove this cause of action in a trial for money damages.

A jurisdictional question has also been raised on this appeal. The Commissioner contends that the Court of Claims has exclusive jurisdiction over petitioner's constitutional claim against him. Subdivision 2 of section 9 of the Court of Claims Act affords the Court of Claims jurisdiction to hear and determine claims "against the state for the appropriation of any real or personal property". This jurisdiction extends to a claim arising out of an unconstitutional *de facto* appropriation of private property by the State *(Keystone Assoc. v State of New York,* 39 AD2d 176, affd 33 NY2d 848). This Court of Claims jurisdiction has been held to be exclusive of Supreme Court jurisdiction where the claim is based on a condemnation statute placing title to the property appropriated in the State *(Moller v New York Cent. R. R. Co.,* 282 NY 188, 194).

The Supreme Court does, however, have jurisdiction to adjudicate Fifth Amendment claims against municipal corporations and other public entities *(Cox v City of New York,* 265 NY 411, cert den 294 US 729; *Summers v City of Glen Cove,* 17 NY2d 307). Therefore, where a municipal corporation is the "final actor" in multi-governmental regulation which amounts to an unconstitutional appropriation of private property, as petitioner alleges here, the Supreme Court is the appropriate forum for resolution of his claim against the various governmental entities involved (25 U Fla L Rev, *supra,* p 688).

The judgment should be modified by reinstating petitioner's cause of action for money damages for the alleged taking and an immediate trial should be had on that claim.

MARSH, P.J., MOULE, MAHONEY and DEL VECCHIO, JJ., concur.

Judgment unanimously modified on the law in accordance with opinion by CARDAMONE, J. and as modified affirmed with costs to petitioner.