Andrew J. Di Paola, J.
The plaintiff, Juleah Co. (Juleah), a New York limited partnership, is the lessee under a ground lease for real property with the buildings and improvements thereon consisting of 381 residential apartments known as the Roslyn Garden Apartments located within the corporate limits of the defendant, Incorporated Village of Roslyn (Village). This action for money damages, injunctive relief and a declaratory judgment nullifying a current Village contract for sanitation services with Donno Co., Inc., arises from the method of allocating charges for such services to Juleah. A review of the underlying facts is necessary to an understanding of the relief sought.
Prior to 1969 the disposal of garbage and refuse generated by the occupants of the apartments had been handled by 11 on-location incinerators. Rubbish and the residues of combustion of garbage and refuse in the incinerators were removed by the Village’s contractors for sanitation services. No charges (except to the extent already embraced within the Village’s general real property taxes charged to Juleah or its predecessors in title) were made by the Village for such services.
In 1969 and 1970 following the issuance of regulations by the Nassau County Health Department and the New York State Environmental Commission, upgrading of the on-premises incinerators was required and summonses for failure to comply with the regulations were issued. Since the cost of upgrading would have been between $5,000 and $6,000 per unit, and the total cost about $60,000, Juleah in 1971 elected to close and seal the incinerators and to rely fully upon the Village’s sanitation services. The Village made those services available under its then contract with a private contractor expiring on May 31, 1971. The additional cost to the Village for providing this extended service (i.e., above the collection of previous incinerator residues) was about $25,000.
By written agreement made as of June 1, 1971, the Village contracted with Gallagher Removal Service, Inc., for the collection, removal and disposition of garbage, refuse, rubbish and ashes in the Village of Roslyn for a period of two years with an option in the Village to renew for one further year. Under that agreement, garbage was required to be collected not less than three days a week from dwellings nor less than four days per week from apartment houses. Rubbish pickups *811 were required to be made at least once a week from all premises. In general, quantity limitations were the same for both residences and apartments. However, the Village reserved the right to limit collections "from all apartment buildings to the average tonnage collected therefrom prior to the discontinuance of the apartment incinerators.” Exercise of that option would result in reductions of the amounts otherwise payable by the Village under the contract by approximately 23%.
Apparently the Village in fact exercised this option because on July 30, 1971, it notified Juleah that:
"[D]ue to the substantially increased costs for garbage removal services caused in large measure by the increase in the amount of garbage collected from the Roslyn Garden apartments as the result of the elimination of the operation of the incinerators, the Roslyn Village Board of Trustees has, under its garbage contract, effective as of June 1, 1971, limited the collection from all apartment buildings to the average tonnage collected prior to the discontinuance or reduction of the incinerator operation.
"Under the above mentioned limitation, the cost to you for the increased garbage collection will be two-thirds of the contract price of $2.90 per apartment[1] unit, per month for the current fiscal year, the Village bearing the cost of the remaining one-third. This payment should be made directly to Gallagher Removal Service, Inc.”
The Gallagher contract was, with the Village’s consent, assigned to Donno Company, Inc. (Donno), another private contractor, on or about February 1, 1974, and as of June 1, 1974, Donno and the Village entered into the current contract which expires on May 31, 1976. Under it residential buildings, defined as "one and two family homes”, are served three days in each calendar week. The limit on volume is three 30-gallon cans of garbage or equivalent and four 30-gallon cans of rubbish or equivalent. Apartment buildings (those renting for living purposes three or more dwelling units) are also serviced on three days in each calendar week. However, the limit on volume in this instance is three 30-gallon cans or equivalent of uncompacted garbage and/or rubbish for every five dwelling units or fraction thereof in the apartment building. In *812 addition one 30-gallon can or equivalent of compacted garbage and/or rubbish is removable for every 15 dwelling units or fraction thereof in the apartment building. A separate service is specified for commercial and miscellaneous buildings. Donno was given the right to "levy a charge against the property owner or occupant for collection and disposal of any materials in excess of the volume limits set forth” above.
Juleah has regularly paid real estate taxes to the Village. These taxes necessarily include a garbage, refuse and rubbish removal component, because the cost to the Village of its contractual sanitation services is incorporated in its annual budgets and its tax rate at any time is determined in part by the size of the budget and the aggregate at that time of the assessed valuations of real property in the Village not exempt from tax. By definition, the taxes imposed on taxable parcels of real estate in the Village are ad valorem taxes computed as to any parcel by multiplying the assessed valuation of the parcel by the tax rate. The assessed valuation of Juleah’s property was $1,171,650 in the tax year ended June 30, 1975, and presumably at a comparable level in earlier years. Obviously, the dollar amount of such a tax based on valuation is not necessarily equal to the actual value of municipal services received by a particular taxpayer or the occupant of a particular tax parcel, nor need it be (cf. Buchanan v Town of Salina, 270 App Div 207, 211; People ex rel. Zerega v Markvart, 230 App Div 767).
In summary then, Juleah has (1) received without charge beyond its Village taxes, garbage and rubbish removal services (a) in the period between June 1, 1971 and May 31, 1974, based on predetermined average tonnage collected prior to discontinuance of its incinerator operations, and (b) in the period since June 1, 1974, based on approximately 2,310 gallons of uncompacted garbage and rubbish every three days[2] and 780 gallons of compacted garbage and rubbish every three days;[3] and (2) paid for removal of quantities in excess of these amounts at the rate of two thirds of the prevailing charge per apartment unit, the Village paying one third thereof.
It also appears that Juleah receives additional service spelled out in Exhibit A in evidence, a letter from Donno to the Village dated July 15, 1975, which states, in part:
*813 "The contract with the Village calls for three day per week collection service. We are providing six day per week collection at the Roslyn Gardens.
"The contract with the Village requires curb collection. However, our truck is collecting garbage in the rear area near the garages. We also provide four containers (each six cubic yard capacity) which are not required by the contract but which are necessary at the apartments to insure safety and cleanliness.”
Juleah claims that as a result of these contracts it has paid to Gallagher and to its assignee Donno under the first contract, and then to Donno under the second contract, and based on its 381 apartments and allocation of two thirds of unit charges as fixed in the Gallagher contract and followed for computations thereafter, the following sums:
For the year Full Unit
COMMENCING CHARGE PAID
June 1, 1971 $2.90 $8,839.20
June 1, 1972 3.05 9,296.40
June 1, 1973 3.20 9.753.60
June 1, 1974 3.20 9,753.60
$37,642.80
There is no proof that any of these additional sums are attributable to the extra services mentioned in the Donno letter of July 15, 1975, referred to in the preceding paragraph.
The plaintiff’s basic contention is that in furnishing sanitation services, a governmental function properly exercised by the Village Nehrbas v Incorporated Vil. of Lloyd Harbor, 2 NY2d 190, 194-195), the Village in its Gallagher and its Donno agreements so differentiates between the services afforded at Village expense to owners or occupants of single or two-family residential units on the one hand and owners or occupants of apartment residential units on the other, as to offend the rights of the latter to the equal protection of the laws. The Village urges that the closing of the plaintiff’s incinerators has increased the quantity, volume and weight of garbage and rubbish generated by the tenants of the plaintiff’s apartments sevenfold and that the classifications established by the agreements were not arbitrary or unreasonable.
Classification in and of itself is, of course, not barred by the constitutional mandates for equal protection of the laws, if it is reasonable or has a rational basis (McGinnis v Royster, 410 *814 US 263, 270; Graham v Richardson, 403 US 365; Baxstrom v Herold, 383 US 107, 111; Gleason v Gleason, 26 NY2d 28, 41). The issue is whether classification in terms of the garbage and rubbish produced by dwellers in one- and two-family houses as compared with dwellers in apartment houses is permissible and if so, to what extent.
Since "[cjourts will take judicial notice of the normal things of life” (Erie County Bd. of Social Welfare v Holiday, 14 AD2d 832), my approach to the problems presented is that it is not structures (houses, apartments or rooms) that produce garbage and rubbish, but their occupants. The refuse of a family of two, three or any other number is more palpably a function of family economics and the age and state of health of its members than of their type of residential accommodation.
Certainly, if the Village had furnished no service to tenants of Juleah while furnishing services to residential users, it would not be argued that the classification was reasonable (cf. State ex rel. Miller v McDonald, 260 Ind 565, cert den 414 US 1158; Mercadante v City of Glen Cove (Supreme Ct, Nassau County, May 23, 1974, Berman, J.); nor would the argument be tenable if service to the apartment complex as a whole were limited to that furnished to an individual home (cf. Matter of Sperry Rand Corp. v Town of North Hempstead, 53 Misc 2d 970, affd 29 AD2d 968; cf. 23 Opns St Comp, 1967, p 771).
But, in the present case we have a situation in which the Village under its current Donno contract removes from occupants of one- and two-family houses 90 gallons of garbage and 120 gallons of rubbish per week at no cost and only removes from occupants of apartments 18 gallons of uncompacted garbage and rubbish and 18 gallons of compacted garbage and rubbish per week. The differences are so prominent as to compel the conclusion that there has been an invidious discrimination between those who reside in private homes and those who reside in apartments. And this is equally true of the result of the application of the Gallagher contract compelling payment by Juleah of two thirds of the cost as there computed for tonnages over the average tonnage produced by the incinerators — i.e., the residues of combustion.
In Grove Gardens Housing Corp. v Incorporated Vil. of Freeport (Supreme Ct, Nassau County, May 18, 1967, Suozzi, J., affd 31 AD2d 599), the Special Term noted:
"Admittedly, under Section 89, subd. 25, and Section 345 of *815 the Village Law, the Village is authorized to provide for the collection of garbage and to assess the cost either as a general village charge by an ad valorem tax or by service charges against the real property benefited. (See Opinion 60-12, Op. State Compt. [1959], Vol. 16, p. 13.) Since the collection service required by the properties of some taxpayers is greater than that required by other properties, and both methods of assessing the cost of collection are authorized, there is no reason why the Village should not be permitted to use a combination of these methods which would permit the Village to vary the charges for the service in accordance with the requirements of the various types of users. In that way the Village’s collection expense would be fairly and equitably distributed on the basis of actual use of the service.
"However, the combination of methods provided for in the challenged ordinance does not achieve such an equitable distribution, and actually discriminates against taxpayers such as the plaintiffs. Although the assessed valuation of the plaintiffs’ properties is not revealed in the papers it is undisputed that their assessments are considerably greater than those of single family units in the Village. As a result of this difference in valuation, the plaintiffs are required to pay a higher ad valorem tax for the same collection service provided to a single family unit, and then are required to pay an additional charge for collections made in excess of the service specified in the ordinance.”
The language, of course, has relation to a different set of circumstances — an ordinance providing for charges to all generators of garbage and rubbish based on the excess over 80 gallons per week and this was in addition to the ad valorem charge. But clearly, the rule emerges that owners of multiple dwellings who pay a much larger ad valorem tax by reason of the valuation of their productive real estate are not to be subjected to charges made unreasonable by virtue of a disproportionate rendition of services to apartment dwellers as distinguished from dwellers in one- and two-family houses. Services need not be equal in kind or value (see p 814, supra), but they must not be grossly disproportionate (cf. Rotondi v Town of Islip, Supreme Ct, Suffolk County, July 15, 1975, Bracken, J.).
This is emphasized by the fact that the Village’s sanitation contracts themselves provide that unit costs of collection from apartment house dwellers as distinguished from those in one- *816 and two-family houses for the same services, are less. In the Gallagher contract it was provided that new units required to be serviced after its inception be charged at rates of $2.90, $3.05, and $3.20 per apartment depending on the year of the contract in which the new unit was added, as compared to amounts of $6.65, $6.98 and $7.33 per new house.
It may be true that the Village fathers in negotiating the Gallagher and then the Donno contracts had in mind the assumed cost of average tonnage collected prior to discontinuance of the plaintiffs incinerators and the increased cost generated by the abandonment of incineration leading naturally to more garbage and rubbish for removal. But that increase did not change the municipal burden to fairly apportion the cost of removal to comparable users and it is not equitable to compare residential users by measurement of raw garbage and rubbish in the case of occupants of one- and two-family buildings and incinerated garbage and rubbish in the case of occupants of multiple dwellings.
The plaintiff has not sued Gallagher or Donno. The court will limit its declaration to one that the application to plaintiff by the Village of the provisions of the Donno agreement insofar as it fixed charges for garbage, rubbish and refuse removal services per dwelling unit on a basis that exceeded charges for such removal from one-family homes, was discriminatory and hence the Village will be permanently enjoined and restrained from seeking collections thereunder. In so adjudicating, the court is not ruling that there may be no difference in charges made to owners or occupants of apartment buildings based upon charges per dwelling unit and those made to owners or occupants of structures housing less than three families.
The plaintiff is entitled to judgment on its first and second causes of action. That may be computed and fixed in the judgment but all proceedings to enforce collection thereof whether by payment, offset or otherwise will be stayed pending appeal by the Village, if it is so advised, and then pending determination by the Appellate Division.

. The $2.90 rate was that fixed by the Village-Gallagher contract for any new apartments erected, occupied and serviced after its inception.

. 381 apartments divided by 5 = 77 X 30 gallons = 2,310 gallons per week

. 381 apartments divided by 15 = 26 X 30 gallons = 780 gallons per week