In the Matter of HOWARD J. O'BRIEN, JR., as Executor of HOWARD J. O'BRIEN, Deceased, et al., Appellants, v CITY OF SYRACUSE et al., Respondents.

Fourth Department, November 5, 1976

*Oot & Fallon (Mackenzie, Smith, Lewis, Michell & Hughes,* by *John Lawton,* of counsel), for appellants.

*Thomas J. Lowery, Jr.,* for respondents.

CARDAMONE, J. P. In the instant case petitioners, owners of commercial realty in Syracuse, attempted to prove acts which resulted in a *de facto* appropriation of their property. They allege, in addition to the loss of rental income and reduction in market value, additional factors such as interruption of utility service, a public auction held by the respondent Urban Renewal Agency (URA) without their consent on the premises, building and construction materials piled around the building and interference with access as a result of construction.

Both the Fifth Amendment to the Federal Constitution and section 7 of article I of the New York State Constitution provide that property shall not be taken for public use without just compensation. In *Danforth v United States* (308 US 271, 285) the Supreme Court defined the constitutional parameters of the Fifth Amendment's "just compensation" clause and stated that "A reduction or increase in the value of property may occur by reason of legislation for or the beginning or completion of a project. Such changes in value are incidents of ownership. They cannot be considered as a 'taking' in the constitutional sense". The New York courts have strictly adhered to the requirement of finding an actual taking. In the leading case of *City of Buffalo v Cement Co.* (28 NY2d 241, 257) the Court of Appeals held: "Accordingly, the mere announcement of impending condemnations, coupled as it may well be with substantial delay and damage, does not, in the absence of other acts which may be translated into an exercise of *dominion and control* by the condemning authority, constitute a taking so as to warrant awarding compensation" (emphasis supplied).

This court recently held in *Fisher v City of Syracuse* (46 AD2d 216, mot for lv to app den 36 NY2d 642, cert den 423 US 833) that damages suffered by "condemnation blight" in the form of depreciation in value and increased maintenance costs during an inordinately long and dilatory implementation of an urban renewal program are not compensable.

Significant public policy considerations underlie the rule requiring an actual physical taking. Were the date of the announcement of the impending condemnation to constitute a *de facto* taking, it would (1) impose an unwarranted burden upon the condemning authority, penalizing it for providing

notice to a property owner and perhaps foster a converse policy of secrecy which "would but raise [greater] havoc with an owner's rights" (28 NY2d, at p 256); (2) might render the construction of public improvements so inordinately expensive as materially to retard development of the State; and (3) create discrimination against public improvements since an owner should not be recompensed for every damage to his real estate, but only when the damage was inflicted for the public use (2A Nichols, Eminent Domain [3d ed], Taking and Damage, § 6.44[1]).

Petitioners' proof at trial respecting these claims was not free from doubt; even were the allegations conclusively proven, they would not, taken cumulatively, constitute the dominion and control necessary to establish a *de facto* taking. We consider briefly each of petitioners O'Briens' claims.

The negligent failure to provide water service might give rise to municipal tort liability (see, 1A Antieau, Municipal Corporation Law, § 11.102), but on the facts here such interruption of service does not rise to the level of interference with possessory rights required to constitute a *de facto* appropriation, since no demand for restoration of service was made until after this action was commenced.

URA acquired a key to a tenant's premises in the O'Brien building, retained it for two years, and then conducted an auction on the premises without the landlord's consent after the tenant's lease had expired. This was undoubtedly a violation of the O'Briens' exclusive possessory rights. Where, however, the unauthorized entry amounts to no more than a temporary intrusion, compensation for any damages suffered may be obtained in an action for trespass. It is only where the intrusion is so extensive in scope or duration that it may be regarded as a taking in fact that the right to compensation under eminent domain can be invoked. Testimony established that during the construction of the Federal complex, building materials were piled along the Water Street side of the O'Brien building, but access to the building itself, although restricted, was not totally obstructed. Under New York law, municipal corporations "are liable where the injury an individual has received is a direct injury accomplished by a corporate act which is in the nature of a trespass upon him" (40 NY Jur, Municipal Corporations, § 976). However, a municipality may not ordinarily be held liable for the tortious conduct of independent contractors it employs (1A Antieau,

*supra,* § 11.04). Even were it assumed that respondents authorized the piling of materials against petitioners' building, the use of lands adjoining a construction site for the purpose of materials storage constitutes a mere trespass, not a taking (2 Nichols, *supra,* § 6.11, n 17). A temporary intrusion of such a limited nature, inflicting no permanent damage, does not amount to the exercise of that degree of dominion and control indicative of a *de facto* taking *(Litchfield v Bond,* 186 NY 66). Any inconvenience and depreciation in value suffered as a result of the impaired ingress and egress was incidental to a permissible exercise of the police powers and is *damnum absque injuria (Bopp v State of New York,* 19 NY2d 368; *Cities Serv. Oil Co. v City of New York,* 5 NY2d 110, cert den 360 US 934; *Jones Beach Blvd. Estate v Moses,* 268 NY 362; *Tucci v State of New York,* 28 AD2d 774, affd 29 NY2d 836; *Jablowsky v State of New York,* 267 App Div 54, affd 292 NY 652).

Petitioners make several other arguments which they believe entitle them to relief. They assert that even if there was not a *de facto* taking, respondents' *delay* in implementing the urban renewal plan and petitioners' consequent injuries amounted to a constitutional taking under *76 Crown St. Corp. v City of New York* (35 AD2d 1005), and in *Matter of Charles v Diamond* (47 AD2d 426). This reliance is misplaced. *Crown* specifically contemplated an eventual *de jure* taking, not indicated from the proof in this case; and, in *Charles* not only was no public purpose served by the town's delay in improving its sewage facilities, but the municipality's failure to act expeditiously was directly contrary to a consent order entered with the Department of Environmental Conservation.

Petitioners further claim that after the failure to achieve a negotiated settlement, the respondent Common Council of Syracuse had an obligation to consider fairly and in good faith the option of initiating condemnation proceedings against their property. They suggest that to permit approval to be withheld merely on the whim of the local governing body vitiates the intent of Congress; and claim that the evidence demonstrates noncompliance with the handbook by the URA and bad faith on the part of the city. Concededly, the URA departed in some respects from the procedures outlined in the UR handbook in failing to give petitioners a final written offer and notice of intention to condemn. The handbook does not, however, mandate the acquisition of all property within the

project area, nor does it require that once negotiations are commenced the property be acquired. On the contrary, the requirement that condemnation decisions be made with the participation of the Common Council indicates a clear intent that such decisions be discretionary. The URA director testified at the trial concerning the contingent character of the acquisition plans in particular and the urban renewal plan in general. We conclude that the trial court's finding that no bad faith had been established is amply supported by the record.

Petitioners' final argument is that they are third-party beneficiaries of the loan and capital grant contract between the URA and HUD, requiring the agency to "carry out the Project with all practicable dispatch, in a sound, economical, and efficient manner and in accordance with the Urban Renewal Plan and the provisions of this Contract". They contend that respondents were also bound to observe the more particularized procedures described in the UR handbook. The contract between the URA and HUD has as its objective the implementation of certain minimum Federal standards for the protection of property owners displaced by urban redevelopment projects. Section 402 of the Housing and Urban Development Act of 1965 (Act of Aug. 10, 1965, PL No 89-117, 79 US Stat 485, formerly codified at US, Code, tit 42, § 3071 *et seq.*), and its successor, section 305 of the Uniform Relocation Assistance and Real Property Acquisition Policies Act of 1970 (US Code, tit 42, § 4651) are the sources of this Federal mandate to deal fairly and expeditiously with property owners affected by Federally funded redevelopment programs. Subdivision (a) of section 102 of the 1970 act (US Code, tit 42, § 4602, subd [a]) which provides that the statutory sections relating to land acquisition procedures "create no rights or liabilities" has been construed as an express preclusion of judicial review of claims arising from the failure to observe the required acquisition procedures *(Barnhart v Brinegar,* 362 F Supp 464). Although the 1965 act contains no parallel provision, the Ninth Circuit Court of Appeals in *Johnson v Redevelopment Agency* (317 F2d 872) held that residents of an urban renewal redevelopment area lacked standing to complain about municipal violations of a funding contract executed under title I of the Housing Act of 1949 (Act of July 15, 1949, PL No 81-171, 63 US Stat 413, formerly codified at US Code, tit 42, § 1441 *et seq.).* The court noted that (p 874): "The federal courts have consistently held that those not parties to

the contract have no standing to enforce conditions imposed on [state] agencies by the United States, although those suing would benefit from such enforcement." The barriers to liability posed by *Barnhart* and *Johnson,* together with the absence of any authority for the imposition of contractual liability under the 1965 act persuade us not to forge a new dimension of Federal contract law with unknown consequences upon the operation of urban renewal projects. Even were we so inclined, the record fails to reveal such violation of the contract as would warrant the imposition of liability upon respondents.

Finally, it is abundantly evident that a serious economic loss has been inflicted on petitioners under the banner of urban renewal progress. Other courts under like circumstances have declared a compensable *de facto* taking *(Foster v City of Detroit,* 405 F2d 138; *Washington Market Enterprises v City of Trenton,* 68 NJ 107). The Court of Appeals in *Clement* stated that while there may be no *de facto* appropriation absent a physical invasion or direct legal restraint, the rule might be otherwise in cases of "the most obvious injustice" (28 NY2d, at p 253). While sympathetic to petitioners' plight, we observe that an economic loss is not necessarily an injustice. Absent evidence of acts by respondents which demonstrates the exercise of dominion and control or evidence of respondents' bad faith sufficient to categorize the circumstances as an obvious injustice, there is no basis here to declare a *de facto* taking.

SIMONS, MAHONEY, DILLON and GOLDMAN, JJ., concur.

Judgment and order unanimously affirmed, without costs.