JULEAH Co., Respondent, v INCORPORATED VILLAGE OF ROSLYN, Appellant.

Second Department, April 4, 1977

*Clarence E. Steinberg, Village Attorney* for appellant.

*Meyer, English & Cianciulli, P. C. (Robert M. Calica* of counsel), for respondent.

SHAPIRO, J. The defendant, the Incorporated Village of Roslyn, appeals from a judgment of the Supreme Court, Nassau County, entered May 12, 1976, which granted judgment to the plaintiff-respondent, the "net lessee" of a 381-unit apartment project, *inter laia:* (1) in the amount of $53,533.58 (including interest, costs and disbursements) for payments it made pursuant to the defendant's direction for collection and removal of garbage and rubbish from its apartment project from June 1, 1971; (2) declaring discriminatory and unlawful the defendant's requirement that the plaintiff pay to the garbage collection companies with which the defendant had contracted for collection and removal of garbage within its area, charges per apartment which exceed charges for such removal from one-family homes within the corporate limits of the defendant; and (3) permanently enjoining and restraining the defendant from seeking to collect additional charges from the plaintiff under the provisions of its contract for garbage removal effective June 1, 1974, insofar as those charges for garbage removal service per dwelling unit in its apartment premises exceed charges for such removal from one-family homes. We affirm.

THE ISSUES

The defendant village has long included and continues to include in its *ad valorem* real property tax collections a factor for collection and removal of garbage and rubbish from residential properties within its geographical limits and seeks no additional charges therefor from owners of one- and two-family homes whose garbage does not exceed certain limitations of amount. The decisive issue on this appeal is whether the defendant violates the constitutional guarantee of equal protection of the laws when it sets lower limits on the amount of garbage it collects per dwelling unit in apartment developments and, in addition, imposes on the owner of the apartment development a substantial additional charge for such service over and above the *ad valorem* real estate taxes collected from such owner.

The secondary issue is whether the plaintiff is precluded by laches from recovering the payments made by it to the gar-

bage collection contractors of the additional charges imposed upon it since June 1, 1971.

Prior to 1969 the defendant provided garbage collection and removal services to owners and occupants of all residential properties within its corporate limits, including multiple dwellings, for no additional charge other than a component included therefor in the *ad valorem* real estate tax imposed upon all real property within the village. The services were provided by the defendant through contracts it made with private carting firms. Prior to 1969, after the incineration by the plaintiff on its premises of its tenants' garbage and refuse, the ash and solid waste residue was collected and removed by the defendant's contractors without any additional charge. In 1969 and 1970 regulations requiring the upgrading of incinerators were issued by the appropriate agencies and, as a result thereof, the plaintiff sealed its incinerators. This resulted in a six- or seven-fold increase in the volume of garbage generated by the plaintiff's apartment premises.

Effective June 1, 1971, the defendant entered into a new contract for garbage collection with the Gallagher Removal Service, Inc. (Gallagher) under which, during the years covered, the contractor was to receive additional specified fees per month for additional services needed as a result of the erection, during the term of the agreement, of new houses, new apartment units and new stores. The contract also provided that the defendant would have the right and option to limit collections from all apartment buildings to the average tonnage collected therefrom prior to the discontinuance of the apartment incinerators and that, if the defendant exercised this option, it would receive reductions of between $16,000 and $18,000 per year from the specified contract prices.

By letter dated July 30, 1971 the assistant to the Mayor of the defendant advised the plaintiff's representative that:

"due to the substantially increased costs for garbage removal services caused in large measure by the increase in the amount of garbage collected from the Roslyn Gardens apartments as the result of the elimination of the operation of incinerators, the Roslyn Village Board of Trustees has, under its garbage contract, effective as of June 1, 1971, limited the collection from all apartment buildings to the the average

tonnage collected prior to the discontinuance or reduction of the incinerator operation.

"Under the above mentioned limitation, the cost to you for the increased garbage collection will be two-thirds of the contract price of $2.90 per apartment unit, per month for the current fiscal year, the Village bearing the cost of the remaining one-third. This payment should be made directly to Gallagher Removal Service, Inc."

The basis of the charge, two thirds of which was added per apartment, was that which the defendant was to pay to the carting contractor for new apartment units. In accordance with the above letter, the plaintiff paid to Gallagher, and later to Donno Co., Inc. (Donno), an assignee of the June 1, 1971 contract, a total of $8,839.20 for the first year, based upon two thirds of the contract charge of $2.90 per apartment in new buildings; $9,296.40 for the second year, based upon the contract charge of $3.05 per apartment; $9,753.60 for the third year, based upon the contract charge of $3.20; and the same sum for the first year of the defendant's new contract with Donno, effective June 1, 1974, which continued the $3.20 charge per apartment for new buildings.

The June 1, 1974 contract defined "residential buildings" as one- and two-family homes, and "apartment buildings" as buildings which rent, for living purposes, three or more units. Under it Donno was required to pick up from each residential building up to three 30-gallon cans or equivalent of garbage "placed by the rear or side door outside each residential building", and up to four 30-gallon cans or equivalent "placed at the curb line", but it was required to pick up from apartment buildings only up to one 30-gallon can or equivalent of uncompacted garbage "placed at the curb line" for every five dwelling units, and only up to one 30-gallon can or equivalent of compacted garbage and/or rubbish "placed at the curb line" for every 15 dwelling units. The assessment of two thirds of the cost per new unit of apartment buildings continued to be based on the collection of garbage and rubbish from units in old apartment buildings, even though no such additional charge was imposed for collection of the larger amounts of garbage per unit allowed to residential buildings.

The Village of Roslyn also exercised its option under the 1971 contract "to limit collections from all apartment buildings to the average tonnage collected therefrom prior to the discontinuance of the apartment incinerators", and received

the reductions specified in its contract, varying from $16,109 in the first year to $17,741 in the third year. Special Term's opinion declared (88 Misc 2d 809, 811): "Apparently the Village in fact exercised its option because on July 30, 1971, it notified Juleah" (as set forth above) that, as of June 1, 1971, collection of garbage from its apartment buildings would be limited to the average tonnage collected prior to its discontinuance of the use of its incinerators.

Special Term's opinion also noted that the plaintiff received additional services from the carting contractor, consisting of collections six days per week instead of three days, and the picking up of its garbage in the rear areas instead of at the curbside, as provided for in the contract, However, Special Term declared (supra, p 813): "There is no proof that any of these additional sums are attributable to the extra services mentioned in the Donno letter of July 15, 1975".

### CONCLUSIONS OF LAW

We affirm the judgment appealed from. The defendant has failed to establish that its imposition of additional charges for collection of garbage from apartment buildings, whose owners already pay an *ad valorem* tax on their real property which includes a component to cover the cost of such garbage collection, while imposing no additional charges for collection of garbage from one- and two-family residences, whose owners also pay an *ad valorem* tax which includes such component, is a classification which has a reasonable basis in fact. Therefore, the practice contravenes the principle of equal protection of the law as contained in the Fourteenth Amendment to the Federal Constitution and section 11 of article I of our State Constitution. The mere fact that there is a difference between apartment dwellings and one- and two-family dwellings does not suffice to establish that the imposition of substantially different charges by a local governing body for collection of garbage on one class as against the other is a reasonable classification. As the Court of Appeals for Cuyahoga County, Ohio, pointed out in *Royal Amer. Corp. v City of Euclid* (No. 34018, Aug. 21, 1975, cert den 425 US 966), when it struck down as an unconstitutional denial of equal protection of the laws an ordinance which denied public collection of garbage to apartment or condominium structures or commercial buildings, while continuing collections of garbage from one- and two-family dwellings: "The classification is based upon the

nature of the buildings involved, the volume of garbage produced in each, and the cost of collection of such garbage. The classification does not take cognizance of the fact that people in apartments and people in single- or two-family dwellings produce the same type of refuse. Citizens living in both types of residences require the removal of their garbage and rubbish on a regular basis for health and safety reasons. There is no rational basis for the municipal decision not to collect garbage from inhabitants of apartments on the one hand and to collect it from inhabitants of residential dwellings on the other."

Of course, here there is no denial of access to the publicly provided system of garbage collection to owners of apartment dwellings, but only the imposition of a substantial additional charge for a substantially smaller amount of garbage collected per apartment. But that does not eliminate the denial of equal protection; it merely lessens the amount of the inequality. This court has struck down other devices used by local governing bodies to achieve a similar form of unequal protection. For example, in *Grove Gardens Housing Corp. v Incorporated Vil. of Freeport* (Sup Ct, Nassau County, Index No. 6948-1966, May 18, 1967, affd 31 AD2d 599), we affirmed a determination by Mr. Justice SUOZZI that an ordinance which imposed charges for garbage collected in excess of 80 gallons per week from any dwelling premises, whether it was a single-family or an apartment building, was discriminatory and invalid. Mr. Justice SUOZZI noted that the charges imposed were in addition to an *ad valorem* property tax levied on all properties in the village for all municipal services, including garbage collection, and said:

"Although the assessed valuation of the plaintiffs' properties is not revealed in the papers, it is undisputed that their assessments are considerably greater than those of single family units in the Village. As a result of this difference in valuation, the plaintiffs are required to pay a higher *ad valorem* tax for the same collection service provided to a single family unit, and then are required to pay an additional charge for collections made in excess of the service specified in the ordinance.

"The combination of methods provided for in this ordinance does not achieve the equality of taxation which is the basic principle of taxation. *Weiskopf v City of Saratoga Springs* [244 App Div 417] *supra.*" (See, also, *Franz, Inc. v City of New Rochelle*, 124 NYS2d 525; *Mercadante v City of Glen Cove*,

Sup Ct, Nassau County, Index No. 5184-74, May 23, 1974 [BERMAN, J.]; *Rotundi v Town of Islip,* Sup Ct, Suffolk County, Index No. 11756/74, July 15, 1975 [BRACKEN, J.]; *Matter of Sperry Rand Corp. v Town of North Hempstead,* 53 Misc 2d 970, affd 29 AD2d 968, affd 23 NY2d 666.)

In *State ex rel. Miller v McDonald* (260 Ind 565), the highest court of Indiana struck down as a denial of equal protection an amendment to an ordinance of the City of Evansville which classified apartment houses with five or more units as commercial enterprises and therefore denied them municipal garbage collection, while continuing to provide such services to all residential buildings with four or fewer units. The court said (p 570): "We believe Ordinance 933, as amended, *transparently* distinguishes between commercial and noncommercial enterprises. Such a classification is arbitrary and devoid of any apparent rationality. The ordinance applies a double standard to those who, in reality, are in the same class without any reasonable justification. Therefore, the commercial-noncommercial distinction, as delineated by the ordinance, denies similarly situated persons equal protection of the laws." The Supreme Court of the United States denied a petition for certiorari in that case *(sub nom. McDonald v Miller,* 414 US 1158).

We find no merit in the defendant's effort to justify its imposition of the additional charge by pointing out that the plaintiff's closing of its incinerators increased the volume of garbage generated by its apartment premises by six- or sevenfold. The defendant makes no claim that it imposed an additional charge on any other residential taxpayer who may have incinerated his garbage and then ceased to do so, and there may well have been owners of one- and two-family homes who did. Further, the defendant ignores the fact that there was no legal requirement that the plaintiff incinerate its garbage prior to 1969 or 1970 when it ceased doing so; nor that the garbage cost component included in the *ad valorem* tax was in any way altered because a particular taxpayer incinerated his garbage prior to 1969 or 1970 when it ceased doing so; nor that the garbage cost component included in the *ad valorem* tax was in any way altered because a particular taxpayer incinerated his garbage.

Nor is there any merit to the defendant's claim that laches on the plaintiff's part bars it from recovering damages. Laches applies to equitable claims, not legal ones *(Fuchs & Lang Sun*

*Chem. De Venezuela, C.A. v Schenectady Chems.,* 43 AD2d 881, 882).

Although not mentioned by either side, we note that the recent decision of the Court of Appeals in *Matter of Charles v Diamond* (41 NY2d 318), modifying the decision of the Appellate Division, Fourth Department (47 AD2d 426) by directing that the plaintiff's claim for money damages should be dismissed, is inapposite. What was there involved was a damage claim based upon alleged consequential damages to undeveloped land. It was based upon a tort claim arising from actions taken by the local governing municipality in the exercise of its police powers under compulsion of the State. Here, the claim is for damages based upon the imposition of additional charges which involve the unequal assessment of charges for garbage collection without a reasonable basis therefor, resulting in an inequitable allocation of the costs to the village of providing its residents with garbage collection and disposal services among various classes of residential property owners. We find nothing in the decision of the Court of Appeals in *Matter of Charles v Diamond (supra)* which would bar recovery by the plaintiff here of the improperly assessed additional payments which the defendant required it to make to its garbage removal contractors.

The judgment appealed from should therefore be affirmed.

RABIN, Acting P. J., TITONE and O'CONNOR, JJ., concur.

Judgment of the Supreme Court, Nassau County, entered May 12, 1976, affirmed, without costs or disbursements.