Barbara Speer sued Pin Palace Bowling Alley and King Louie Enterprises, alleging that on March 5, 1989, she sustained injuries as a result of negligent operation and maintenance of a bowling lane. Speer said that while bowling on the particular lane she fell forward after her left foot "stuck on something on the floor." She said she fell during the third frame of the first game. There was no evidence that Speer or the two persons bowling with her had had problems with their feet sticking on the lane prior to Speer's fall. In addition, after her fall, and before she reported her fall, the other two persons bowling with her completed the first game without having any problems with their feet sticking.
On August 13, 1991, the defendants moved for a summary judgment, supporting their motion with the pleadings and Speer's deposition testimony. The trial court heard the motion on September 6, 1991, 30 months after the plaintiff's fall; at that hearing the defendants contended that without evidence of actual or constructive notice — that is, evidence concerning the length of time the substance to which the plaintiff's left foot "stuck" had been on the floor — the plaintiff could not recover against the defendants. In response, the plaintiff stated that she had been unable to locate the witness that would provide that evidence and requested additional time ("a couple of days") to formulate a response in opposition to the defendants' motion. According to the parties, the trial court granted the request and set September 10, 1991, as the date for the submission of all materials. The plaintiff failed to respond until September 11, 1991, when she filed a motion to add in support of her opposition to the summary judgment motion "an additional affidavit" of "the only witness known to [the plaintiff] to have first hand knowledge of the condition of the floor at the time of [the plaintiff's] fall and the condition of the floor prior to [the plaintiff's] fall." In that motion, the plaintiff claimed that although she had discovered there was a witness who knew of the spot on the floor, she had been unable to locate the witness and to secure the affidavit until the night of September 10. The defendants filed a motion to strike the affidavit and the accompanying memorandum as untimely filed. Without ruling on these motions, the trial court entered a judgment for the defendants. Thereafter, the plaintiff filed a motion for relief from the judgment, with an attached affidavit of plaintiff's counsel explaining the delay in providing the witness's affidavit. The defendants moved to strike that motion. Without stating its reason, the trial court denied the plaintiff's motion and granted the defendants' motion to strike. The plaintiff appeals.[1] We affirm. *Page 1142 
In reviewing a summary judgment, we look to what was before the trial court when it entered the judgment. See, Greene v.Thompson, 554 So.2d 376 (Ala. 1989). In doing so, we note the plaintiff's contentions that the affidavit of her only witness, which she submitted to the trial court on September 11, 1991, presented sufficient evidence of constructive notice of that spot and therefore precluded the entry of a summary judgment. According to the plaintiff, because the trial court never denied her request to add the affidavit, it therefore accepted the affidavit, thus making the affidavit part of the record that must be considered on review. The defendants, however, contend that because the affidavit was untimely filed, the trial court could and did exercise its discretion and refused to consider it.
According to Rule 56(c), A.R.Civ.P., if the nonmoving party files an affidavit in opposition to a summary judgment motion, the affidavit shall be served prior to the day of the hearing on the motion. However, Rule 6(d), A.R.Civ.P, qualifies Rule 56(c) by placing it within the trial court's discretion to permit, or to refuse to consider, an affidavit that is untimely.
In this case, although the trial court granted the plaintiff additional time after the hearing on the motion to file an affidavit, she failed to file the affidavit within the time set by the trial court. Therefore, the trial court was not required to consider the affidavit when ruling on the motion; and from our review of the trial court's order, which reads in pertinent part as follows, we find it apparent that it did not consider the affidavit:
 "A hearing on said motion was held on the 6th day of September, 1991, at 9:00 A.M. . . . All parties were represented at that time and date by counsel and oral argument was had upon the motion. The court having considered the motion, oral argument of counsel, deposition testimony of [the plaintiff], the court is of the opinion that the motion of the defendants for a summary judgment in their favor and against [the plaintiff] is well taken and is due to be granted. The court is further of the opinion that there exists no genuine issue as to any material fact, and that the defendants are entitled to a judgment as a matter of law."
(Emphasis added.)
In an absence of a showing of excusable neglect, which under the facts of this we do not find, we cannot hold that the trial court abused its discretion in refusing to consider the affidavit. Johnson v. Allstate Insurance Co., 505 So.2d 362
(Ala. 1987); Faith, Hope Love, Inc. v. First Alabama Bank ofTalladega County, N.A., 496 So.2d 708 (Ala. 1986). See, also,Real Coal, Inc. v. Thompson Tractor Co., 379 So.2d 1249 (Ala. 1980).
The issue for our review is whether there was sufficient evidence to establish that the defendants had constructive notice of the alleged "sticky spot" upon which the plaintiff says she fell.
The pertinent part of the plaintiff's testimony as to the defendants' alleged negligence in maintaining and operating the bowling lane where she fell is as follows:
 "Q: Before you fell [did you buy anything to eat or drink while you were there?]
"A: No, sir.
 "Q: How about the others, were they eating or drinking?
"A: No, sir.
"Q: How about the adjoining lanes, do you know?
". . . .
 "A: I did not pay any attention to them. "Q: Tell me what happened.
 "A: . . . I went to throw the [bowling] ball . . . [a]nd my left foot stuck on something on the floor. And I was not expecting it because I did not see it and it threw me forward.
"Q: Did you see anything on the floor? *Page 1143 
 "A: No, sir, I did not. Unless it is just freshly done you can't see anything on the floor.
"Q: But you saw nothing on the floor?
"A: No, sir.
". . . .
 "A: After I gathered myself ['a good five minutes' after the fall] I went up to the desk and explained to the guy that I had fallen and there was something on the floor.
". . . .
 "A: I told him that I had fallen and there was something on the lane. . . . He said, well, I will try and get somebody down there to get it up.
". . . .
"Q: When he came over there what did he do?
 "A: He had like a big buffer pad . . . that you use on floors . . . [and he went across where I told him it was. And he said, 'Yeah, I got it.' It was there. He got it off the floor. There was something on the floor].
 "Q: He comes over with one of these circular buffing pads [and he runs it across the area of the lane there where you say there was something that you could not see].
 "A: He put it down on the area and was rubbing around with his foot and his foot even stuck with the buffer pad underneath his foot. And he had to buff that with the buffer pad before he could get it up off the floor. He had to get down and rub it hard with his hand before he could get whatever was on that floor off of it.
". . . .
 "Q: Was the buffer pad attached to the mechanical device that spins it in a circle?
"A: No, sir. It was in his hand.
". . . .
"Q: How big an area did he rub?
". . . .
 "A: I guess it was about as big as the buffer pad. . . . And he found the spot and he was doing it with his foot and his foot stuck with the buffer pad underneath it.
 "Q: He did not have any kind of cleaning agent or anything like that, just the buffer pad?
 "A: No, sir, just the buffer pad [and he said there was a spot down there and that he got it up].
". . . .
 "A: . . . When I fell the two ladies next to me . . . stated that it seemed like [my] left foot just stuck to the floor.
". . . .
 "Q: You observed somebody else fall that afternoon?
". . . .
 "A: [After the employee cleaned up the area where I had fallen, a girl on the lane to the left of me fell on something and quit bowling] and myself.
". . . .
 "Q: Whatever was there [on the floor] do you know how long it was there?
"A: No, sir."
(Emphasis added.)
Viewing the evidence in the light most favorable to the plaintiff, as we are required to do under the applicable standard of review, we hold that the evidence amounts to little more than speculation or conjecture as to the nature of the substance on the floor, as to the length of time the substance was on the floor, and as to whether the defendants were delinquent in not discovering the substance and cleaning it up. Because the defendants made a prima facie showing that they had no actual or constructive notice of the presence of the substance and that they were not derelict in failing to discover and remove the substance, the burden shifted to the plaintiff to present substantial evidence that the alleged substance that caused her to fall had been on the floor for such a length of time that constructive notice of its presence could be imputed to the defendants; that the defendants had actual notice that the substance was on the floor; or that the defendants were delinquent in not discovering and removing the substance. See Richardson v. Kroger Co., 521 So.2d 934 (Ala. 1988). If she failed to present substantial evidence of any of those things, the defendants *Page 1144 
were entitled to a summary judgment. See, Brown v. Autry Greer Sons, Inc., 551 So.2d 1049 (Ala. 1989) (affirming a summary judgment for the defendant where the plaintiff presented no evidence to show that the defendant had actual or constructive notice of the substance in question, or that the defendant was delinquent in not discovering and removing it); Vargo v.Warehouse Groceries Mgt., Inc., 529 So.2d 986 (Ala. 1988) (affirming a summary judgment for the defendant where the plaintiff and her only witness testified that they had no idea how long the puddle of water on which the plaintiff had slipped had been on the floor, except that it "looked like it had been there for a while," and where there was no other evidence as to how long the water had been present or that the defendant had notice of it). See, also, East v. Wal-Mart Stores, Inc.,577 So.2d 459 (Ala. 1991) (affirming a summary judgment for the defendant where the plaintiff and her only witness testified that they did not know how long the substance had been on the floor and that they did not believe that the defendant had any notice the substance was there until after the accident). SeeCash v. Winn-Dixie Montgomery, Inc., 418 So.2d 874 (Ala. 1982) (affirming a summary judgment for the defendant where there was no evidence that the defendant knew that the foreign substance had been on the floor for such a length of time "as to impute constructive notice"). Furthermore, in Logan v. Winn-DixieAtlanta, Inc., 594 So.2d 83 (Ala. 1992) (in which the plaintiff testified that she did not know what the substance was that caused her to slip), the Court held that the plaintiff's evidence presented to show that her injuries were the result of the negligence of the defendants afforded nothing more than speculation, conjecture, or guess and was wholly insufficient to warrant submitting the case to the jury. But see Maddox v.K-Mart Corp., 565 So.2d 14 (Ala. 1990); Ex parte Travis,414 So.2d 956 (Ala. 1982); and S.H. Kress Co. v. Thompson,267 Ala. 566, 103 So.2d 171 (1957), in which the Court held that under the facts of some cases, testimony as to the nature and condition of the substance can be sufficient to support an inference that the defendant should have discovered a foreign substance on the floor of its premises. These cases are distinguishable from the case at issue. Therefore, the trial court did not err in entering the summary judgment for the defendants.
Furthermore, the trial court did not err in denying the plaintiff's motion for relief from the judgment. The plaintiff's motion sought to have the trial court reconsider its summary judgment in light of what the plaintiff considered to be new evidence belatedly submitted in opposition to the defendants' motion for summary judgment. However, the affidavits filed in support of the motion for relief from the judgment were in essence what was presented to the trial court in opposition to the motion for summary judgment subsequent to the hearing on the motion but prior to the trial court's entering the judgment for the defendants — the same material the trial court had the discretion to, but did not, consider. A motion for relief from judgment is not intended to extend the time for filing affidavits or other materials in opposition to a motion for summary judgment. See Raymond v. Amason,565 So.2d 614 (Ala. 1990); see, also, Moore v. Glover, 501 So.2d 1187
(Ala. 1986).
AFFIRMED.
HORNSBY, C.J., and MADDOX, SHORES and KENNEDY, JJ., concur.
[1] This case was filed after June 11, 1987; therefore, the "substantial evidence rule" is applicable. Ala. Code 1975, §12-21-12. See, West v. Founders Life Assurance Co. of Florida,547 So.2d 870 (Ala. 1989), for a definition of the "substantial evidence rule."