This is a slip and fall case. The plaintiff, Howard Williams, Sr., sued Holy Name of Jesus Hospital, alleging that an employee of the hospital had negligently or wantonly mopped his bathroom floor while he was out walking and that the hospital had failed to warn him that the bathroom floor was wet. After a trial on the merits, the jury found in favor of Williams and awarded him $100,000. The hospital appeals from a judgment based on that verdict.
 FACTS
In September 1990 Howard Williams, Sr., was admitted to the Holy Name of Jesus Hospital because he was experiencing chest pains. After a catherization revealed some blockage, Williams underwent a triple bypass surgery on September 7, 1990. After surgery, Williams remained in the Cardiac Care Unit at the hospital for four days. After he left the Cardiac Care Unit, he was transferred to a private room.
The fall occurred on the morning of September 17 in the bathroom adjoining Williams's hospital room. Williams testified that he was served breakfast at approximately *Page 47 
7:00 a.m. Thirty minutes to an hour later, two physical therapists came to Williams's room to take him on his walking exercises. Approximately 15 minutes later, he was returned to his private room and there he sat in a chair beside his bed. After the physical therapists left, Williams needed to use the bathroom. As he opened the door to the bathroom, he said, he noticed that the inside of the bathroom looked wet and damp. He testified that, although he saw no puddles, the ceramic tile floor of the bathroom "glistened." When Williams entered the bathroom he slipped and fell as he reached for the light switch.
After the fall, Williams said, he called for help until two hospital employees came to his assistance. He testified that as the employees picked him up off the floor the entire bathroom appeared to be wet and damp, but that there were no puddles on the floor. He testified that the backside of his pajama pants was wet and that there were "grit" particles on the "bottom" part of his pajama pants. Williams testified that he had not used the bathroom facility since the evening hours of the day before, but had been using a bed pan. Virginia Williams, the plaintiff's wife, testified that after the accident she received Williams's pajama pants and that they were wet with some kind of liquid.
Nancy Hyatt, one of the employees who assisted Williams after his fall, testified that when she found Williams the floor of the bathroom was not wet, although the inside of the legs of Williams's pajama bottoms were wet, and she said that she thought Williams has urinated on himself. Marian Giamalva, a nurse's aide who also assisted Williams, testified that she noticed that Williams's pajama bottoms were wet and that there was urine on the floor.
Louellen McGruder, a hospital service worker, testified that the bathroom had not been cleaned that morning, and, according to the hospital's cleaning schedule, would not have been cleaned until after the lunch hour, which began at 11:30 a.m.
 DISCUSSION
The hospital argues that, on these facts, the trial court should have directed a verdict in its favor and should not have permitted the case to go to the jury. In the alternative, the hospital argues that the evidence does not support the verdict. We agree with the hospital that the trial court should have directed a verdict.
In Bonds v. Brown, 368 So.2d 536 (Ala. 1979), the plaintiff, while a hospital patient, slipped and fell in the bathroom adjacent to her hospital room. She attributed her fall to what she called the slippery condition of the tile floor. After she fell, she observed the general condition of the bathroom and testified that the floor had a soapy substance on it, which she said she believed to be shaving cream. She contended that the hospital had negligently failed to provide and maintain a reasonably safe premises for her use as a patient. The trial court directed a verdict for the defendant. This Court, finding that the plaintiff's evidence was insufficient as a matter of law to create a jury issue, affirmed the judgment based on the directed verdict.
In Logan v. Winn-Dixie Atlanta, Inc., 594 So.2d 83 (Ala. 1992), a plaintiff slipped and fell on a concrete ramp at the entrance to a Winn-Dixie supermarket. She sued Winn-Dixie Atlanta, Inc.,[1] Blue Springs Village, Ltd.,[2] and Anderson Properties, Inc.,[3] alleging that they had negligently caused her to slip and fall. She testified that she stepped into a "slippery spot" and fell, injuring to her ankle. She testified that at the time of her injury she did not know what the "spot" was, or what had caused her to slip, but testified that after she got home from the emergency room she noticed yellow paint on the bottom of her shoe. The defendants moved for a summary judgment and submitted the affidavits of the Winn-Dixie store manager and the vice president of Anderson Properties. *Page 48 
Their testimony was to the effect that there had been no painting in the area where the plaintiff fell. The trial court entered a summary judgment, and the plaintiff appealed. This Court affirmed, holding that the plaintiff's evidence presented to show the negligence of the defendants afforded nothing more than speculation, conjecture, or guess and was insufficient to warrant submitting the case to a jury.
The parties agree that Williams's status was that of a business invitee. The defendant's duty owed to him was to keep the premises in a reasonably safe condition by the exercise of ordinary and reasonable care. Bonds, supra; Shaw v. City ofLipscomb, 380 So.2d 812 (Ala. 1980); Tice v. Tice,361 So.2d 1051 (Ala. 1978). An owner of a premises is not an insurer of the safety of his invitees, and the doctrine of res ipsa loquitur is not applicable to slip and fall cases. Neither does a presumption of negligence arise from the mere fact of an injury to an invitee. Tice, supra; Shaw, supra; Ex parteTravis, 414 So.2d 956 (Ala. 1982); Graham v. Wal-Mart Stores,Inc., 529 So.2d 938 (Ala. 1988).
To succeed on his claim, Williams had to prove more than that he slipped and fell on a foreign substance on the bathroom floor. Williams had to prove that the hospital had either actual or constructive notice of the foreign substance on the floor, or that the hospital was delinquent in not discovering the offending substance. See Bonds, supra; Logan, supra. See also, Speer v. Pin Palace Bowling Alley, 599 So.2d 1140 (Ala. 1992); Richardson v. Kroger Co., 521 So.2d 934 (Ala. 1988);Brown v. Autry Greer Sons, Inc., 551 So.2d 1049 (Ala. 1989);Vargo v. Warehouse Groceries Mgt., Inc., 529 So.2d 986 (Ala. 1988).
Williams testified that although he saw no puddles, he noticed that the ceramic tile floor of the bathroom "glistened." He said that the backside of his pajama bottoms was wet and that there were some "grit" particles on the "bottom" part of his pajama pants after his fall. Williams also testified that as he was picked up off the floor, the entire bathroom appeared to be wet and damp, but that there were no puddles on the floor. Williams's wife testified that his pajama pants were wet.
Williams alleges that he slipped on a wet substance and, therefore, that his bathroom must have been mopped while he was out of his room during his 15 minute walk and that the mopping of the floor gave the hospital actual notice of a dangerous condition. However, he presented no evidence from which it might reasonably be inferred that the bathroom had, in fact, been mopped. As a result, in order to find the hospital liable, the jury was required to infer from the circumstances of the accident that Williams slipped on a wet substance and that that substance was water and not Williams's urine. It was then required to go a step further and infer that that water was on the floor because his bathroom had just been mopped. Such a conclusion could have been based only on conjecture or speculation, and it cannot serve as a proper basis for a jury verdict. Perdue v. Gates, 403 So.2d 165 (Ala. 1981).
Because Williams failed to prove an act of negligence or wantonness by the hospital, the trial court erred by denying the hospital's motion for a directed verdict. The judgment in favor of Williams must be reversed and a judgment rendered in favor of the hospital.
REVERSED AND JUDGMENT RENDERED.
MADDOX, ALMON, KENNEDY, and COOK, JJ., concur.
[1] Winn-Dixie Atlanta, Inc., leased a portion of the premises and operated the grocery store.
[2] Blue Springs Village, Ltd., owned the shopping center.
[3] Anderson Properties managed the property.