[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 1237 
Stephen L. Morrison sued Wild Wild West Social Club, Inc., doing business as Plum Crazy (hereinafter "Wild Wild West"); Dallas Malone; Metropolitan Patrol Service ("Metropolitan"); Albert Dyess; and various fictitiously named defendants, alleging that they were responsible for causing injuries he had received during an altercation outside a bar operated by Wild Wild West. The case was submitted to a jury against Wild Wild West, Metropolitan, and Dyess; the jury returned a $35,000 verdict in favor of Morrison. The trial court entered a judgment based upon that verdict. Wild Wild West appealed; the Court of Civil Appeals affirmed. See Wild Wild West Social Club, Inc. v. Morrison,806 So.2d 1228 (Ala.Civ.App. 2000). We granted Wild Wild West's petition for certiorari review; we reverse the judgment of the Court of Civil Appeals.
 I. Factual Background
The vast majority of the facts relevant to a determination of liability are undisputed. The evidence in the record tended to show the following: On the evening of November 9, 1996, Morrison went to a bar called "Plum Crazy," operated by Wild Wild West, and while there he drank two or three beers and danced on the dance floor. Around 1:00 a.m., a fight broke out near Morrison on the dance floor, and, although Morrison contends he was not involved in the fight, a Wild Wild West bouncer, wearing a black shirt that identified him as a bouncer at the bar, forcibly ejected Morrison from the bar, taking Morrison outside into the parking lot. Another Wild Wild West bouncer separated Morrison and the first bouncer. Morrison was then pulled away from the first bouncer by two Metropolitan security guards who were guarding the parking lot; one of the two security guards was Metropolitan's owner, Albert Dyess. Morrison knew these two security guards because they had provided security services for an automobile-stereo business Morrison owned and operated.
Morrison then walked toward the first bouncer, ostensibly to ask him why he had *Page 1238 
ejected Morrison from the bar. While walking toward the bouncer, Morrison pushed aside James Graham, one of the Metropolitan security guards, and made a comment to him. At this point, the two guards, both of whom Morrison knew, grabbed him and walked him back to their Metropolitan patrol car. At some later point, Graham came up to Morrison and, apparently attempting to hit him in the chest, threw a single punch with his fist and hit him in the groin.
Regarding that punch and the events that occurred later, the testimony of the only two witnesses called at trial is contradictory. Graham testified that Morrison had tried to kick him before Graham threw the punch and that immediately after being struck Morrison drove away in his van with some friends. Morrison denied ever trying to kick Graham and stated that after he was hit, he fell to the ground, vomited, and passed out. Morrison testified that only after an hour of recuperation was he able to drive his van home. Morrison then testified that a manager of the bar came out, apologized to Morrison, and told him that the bouncer who had ejected him had been fired; and he testified that Albert Dyess, the owner of Metropolitan, also told Morrison that he had fired Graham. Graham testified that he never again worked at the Wild Wild West location. The evidence in the record indicates that the security guards were employed by Metropolitan and that Metropolitan had been hired to secure the club's parking lot.
Two days later, Morrison drove himself to an emergency room because he was still experiencing pain and swelling in his groin. Doctors discovered that one of Morrison's testicles was ruptured; they performed emergency surgery and removed half of the damaged testicle. Morrison testified that he recuperated at home for almost two months and that at the time of the trial he was still experiencing periodic pain resulting from the injury.
 II. Proceedings Below
Wild Wild West moved for a judgment as a matter of law ("JML," formerly known as a directed verdict), pursuant to Ala.R.Civ.P. 50(a); the trial court denied the motion. After the jury returned the verdict, Wild Wild West renewed its motion for a JML, and, in the alternative, moved for a new trial, pursuant to Rule 59, Ala.R.Civ.P. Wild Wild West argued, among other things, that Morrison had presented no legally sufficient basis for a reasonable jury to find that James Graham, Albert Dyess, or Metropolitan was an agent, servant, or employee of Wild Wild West, or that they were acting within the line and scope of their authority when Morrison was injured. Further, Wild Wild West argued that the evidence provided no legally sufficient basis for a reasonable jury to find that the plaintiff's injuries had been proximately caused by Wild Wild West's conduct or that those injuries could have been reasonably foreseen by Wild Wild West. The court denied Wild Wild West's motion for a JML or a new trial.
Wild Wild West argued to the Court of Civil Appeals 1) that Morrison had not presented substantial evidence indicating that the injuries he received were the foreseeable result of his ejection from the bar; 2) that Morrison had not presented substantial evidence indicating that the injuries he received were caused by an agent, servant, or employee of Wild Wild West; and 3) that Morrison had not presented substantial evidence indicating that Wild Wild West operated the bar known as "Plum Crazy."
The Court of Civil Appeals affirmed the trial court's judgment based upon the jury *Page 1239 
verdict, initially voting four to one, with Judge Thompson dissenting. On Wild Wild West's application for rehearing, Judge Crawley changed his vote to a dissent. The Court of Civil Appeals stated in its opinion that it agreed with Morrison's argument that "it was foreseeable that Graham, acting as a security guard for Wild Wild West, would be hostile toward Morrison because Morrison had just been forcibly ejected from the club." 806 So.2d at 1230. As to Wild Wild West's claim that Graham had not been acting as its agent, the Court of Civil Appeals stated that "Graham was clearly placed in the parking lot to act on behalf of, and for the benefit of, Wild Wild West." Id. at 1231. As to the final issue raised by Wild Wild West, whether Wild Wild West occupied the premises on which a business known as "Plum Crazy" was conducted, the court held that Wild Wild West had "failed to raise this argument before the trial court," thereby precluding its consideration on appeal. Id. at 1232. Wild Wild West raises these three issues on certiorari review. Because we reverse the judgment of the Court of Civil Appeals, based upon Wild Wild West's first two arguments, we need not discuss its third argument.
 III. Standard of Review
The standard by which this Court will review a ruling on a motion for a JML is well settled:
 "When reviewing a ruling on a motion for a JML, this Court uses the same standard the trial court used initially in granting or denying a JML. Palm Harbor Homes, Inc. v. Crawford, 689 So.2d 3 (Ala. 1997). Regarding questions of fact, the ultimate question is whether the nonmovant has presented substantial evidence to allow the factual issue to be submitted to the jury for resolution. Carter v. Henderson, 598 So.2d 1350 (Ala. 1992). See, also, § 12-21-12, Ala. Code 1975, and West v. Founders Life Assurance Co. of Florida, 547 So.2d 870, 871 (Ala. 1989). A motion for JML `is properly denied where there exists any conflict in the evidence for consideration by the jury.' Cloverleaf Plaza, Inc. v. Cooper Co., 565 So.2d 1147, 1149 (Ala. 1990). In reviewing a ruling on a motion for a JML, this Court views the evidence in the light most favorable to the nonmovant and entertains such reasonable inferences from that evidence as the jury would have been free to draw."
Daniels v. East Alabama Paving, Inc., 740 So.2d 1033, 1037 (Ala. 1999). Because Wild Wild West was the party that moved for a JML, we must review the evidence in a light most favorable to Morrison.
 IV. Foreseeability
One theory of liability submitted to the jury was that Wild Wild West had negligently started a chain of events that led to Morrison's subsequent injury. Morrison's theory was that when the bouncer at Wild Wild West ejected Morrison from the bar, this event caused the parking-lot security guards to perceive that Morrison was a troublemaker, and that this perception led, without a break in the chain of causation, to Morrison's ultimate injury. Wild Wild West vigorously contested this theory, arguing that it was predicated upon events that were not reasonably foreseeable.
"It is a well-established rule of law in this state that in order to prove a claim of negligence a plaintiff must establish that the defendant breached a duty owed by the defendant to the plaintiff and that the breach proximately caused injury or *Page 1240 
damage to the plaintiff." Lowe's Home Ctrs., Inc. v. Laxson,655 So.2d 943, 945-46 (Ala. 1994). "The existence of a legal duty is a question of law for the court; `where there is no duty, there can be no negligence.' Rose v. Miller Co., 432 So.2d 1237,1238 (Ala. 1983)." Albert v. Hsu, 602 So.2d 895,897 (Ala. 1992). See also Ex parte Chevron Chemical Co.,720 So.2d 922, 924 (Ala. 1998). The question of the existence of a duty to use care is grounded in the concept of foreseeability. "The ultimate test of a duty to use care is found in the foreseeability that harm may result if care is not exercised." Bushv. Alabama Power Co., 457 So.2d 350, 353 (Ala. 1984) (citing Havard v. Palmer Baker Eng'rs, Inc., 293 Ala. 301, 302 So.2d 228
(1974). Additionally, businesses are required to use ordinary care to keep their premises in reasonably safe condition. See Riverview Reg'lMed. Ctr., Inc. v. Williams, 667 So.2d 46 (Ala. 1995).
The evidence, even when viewed in a light most favorable to Morrison, shows that Graham's actions constituted nothing more than bald retaliation against a perceived personal slight. This case does not involve a question of the appropriate level of force to be used by a security guard in the discharge of his duties. Morrison's injury was not related to foreseeable jostling he might receive while struggling with a guard. Accepting Morrison's version of the events, one must conclude that Graham simply attacked Morrison. It is under these facts that we must analyze the concept of foreseeability. The concept of foreseeability, especially when relating to the criminal conduct of third parties, does not lend itself to a hard and fast rule; rather, its application depends upon the facts and circumstances of each case:
 "We have held that in order to recover against a defendant for harm caused by the criminal actions of a third party, the plaintiff must establish that the defendant `knew or had reason to know of a probability of conduct by third persons that would endanger the plaintiff.' Nail v. Jefferson County Truck Growers Association, Inc., 542 So.2d 1208, 1211 (Ala. 1988). Also, a subsequent cause of the plaintiff's injuries is not an `intervening cause,' unless it was unforeseeable.
 "`"The act of a third person in committing an intentional tort or crime is a superseding cause of harm to another resulting therefrom, although the actor's negligent conduct created a situation which afforded an opportunity to the third person to commit such tort or crime, unless the actor at the time of his negligent conduct should have realized the likelihood that such a situation might be created thereby and that a third person might avail himself of the opportunity to commit such a tort or crime."'
 "Liberty National Life Insurance Co. v. Weldon, 267 Ala. 171, 188, 100 So.2d 696, 710 (1957) (quoting [Restatement of the Law of Torts] § 448 [(1934)]; see also Michael L. Roberts Gregory S. Cusimano, Alabama Tort Law Handbook § 1.2, at 19 (1990). Proximate cause is an act or omission that in a natural and continuous sequence, unbroken by any new independent causes, produces the injury and without which the injury would not have occurred. The requirement of foreseeability is imposed to preclude a finding of liability when the defendant's conduct was part of the causal chain of events leading to the injury but the resulting injury could not have been reasonably anticipated by the defendant. *Page 1241 
Foreseeability does not require that the particular consequence should have been anticipated, but rather that some general harm or consequence could have been anticipated."
Thetford v. City of Clanton, 605 So.2d 835, 840 (Ala. 1992). As Judge Thompson stated in his dissent, "the question of foreseeability is not whether Graham might be `hostile' toward Morrison or might `become involved' in the security incident, but whether it was foreseeable to Wild Wild West that Graham would walk up and strike Morrison absent provocation." Wild Wild West Social Club, Inc., supra, at 1232. Furthermore, "foreseeability must be based on the probability that harm will occur, rather than the bare possibility. 65 C.J.S. Negligence § 4(3) (1966). See Southern Ry. v. Carter, 164 Ala. 103, 51 So. 147
(1909)." Hutto v. Gold's Gym, Inc., 703 So.2d 974, 976 (Ala.Civ.App. 1996).
The bare chance that an ejected bar patron might be attacked by a security guard is not sufficient to impose liability on the operator of the bar. No evidence at trial indicated that Graham had a propensity for violence, or that similar altercations had previously occurred. No evidence presented at trial indicated that Wild Wild West had ever received a complaint about Graham or about any other security guard employed by Metropolitan. The only evidence suggesting that Wild Wild West could have foreseen any measure of violence related to Graham was Graham's testimony in which he described his job duties by stating that he was to "watch the parking lot, observe, check cars, make people that were highly intoxicated, whatever, leave the premises, break up any type fight that occurred out in the parking lot." Again, keeping in mind Morrison's theory of the case, that Wild Wild West was negligent in ejecting him from the bar because it should have known Morrison would eventually have an altercation with Graham, we conclude that Wild Wild West cannot be held liable for Morrison's injuries on a theory of direct negligence on the part of Wild Wild West, because the injuries Morrison received were not legally foreseeable by Wild Wild West.
 V. Agency Relationship
Wild Wild West's second argument is that Morrison presented no substantial evidence indicating that James Graham was the agent of Wild Wild West, or that in punching Morrison Graham was acting within the line and scope of any supposed agency. We first consider whether the evidence would support a finding that Graham was an agent of Wild Wild West. "The test for agency is whether the alleged principal has retained a right of control over the actions of the alleged agent. John R. Cowley Bros.,Inc. v. Brown, 569 So.2d 375 (Ala. 1990)." Gist v. Vulcan Oil Co.,640 So.2d 940, 942 (Ala. 1994). See also Butler v. Aetna Fin. Co.,587 So.2d 308 (Ala. 1991).
Proof of an agency relationship between Wild Wild West and Metropolitan or Graham, rather than an independent-contractor relationship, is critical to Morrison's action, because it is a "well-settled rule that a principal is not ordinarily liable for the torts of its independent contractor." Joseph Land Co. v. Gresham, 603 So.2d 923, 926 (Ala. 1992) (citing Fuller v. Tractor Equip. Co., 545 So.2d 757 (Ala. 1989);Butler, supra). Under a theory of respondeat superior, a principal can be held liable for a tort committed by his agent only if the agent commits the tort while working within the line and scope of his employment. SeeLatham v. Redding, *Page 1242 628 So.2d 490, 495 (Ala. 1993). See also Sakas v.Capital Concepts Corp., 565 So.2d 237 (Ala. 1990); Merrell v. Joe BullardOldsmobile, Inc., 529 So.2d 943 (Ala. 1988).
Furthermore, "when a defendant's liability is based on the theory of agency, agency may not be presumed, and . . . to [support a finding of liability] the plaintiff must present substantial evidence of an agency relationship. Carlton v. Alabama Dairy Queen, Inc., 529 So.2d 921 (Ala. 1988)." Battles v. Ford Motor Credit Co., 597 So.2d 688, 689 (Ala. 1992). The party asserting the existence of an agency relationship "`has the burden of adducing sufficient evidence to prove its existence.'"Mardis v. Ford Motor Credit Co., 642 So.2d 701, 704 (Ala. 1994) (quotingWood v. Shell Oil Co., 495 So.2d 1034 (Ala. 1986)).
Morrison had the burden, therefore, of presenting evidence of an agency relationship between Wild Wild West and Graham. We conclude that he did not present such evidence. Morrison, in fact, had actual knowledge that Graham was not acting as an agent of Wild Wild West; this is evidenced by the fact that Morrison himself had employed Metropolitan, Graham's employer, to provide security services at his automobile-stereo store. Further, no evidence in the record suggests that Wild Wild West retained, or exercised, any control over the means by which Graham and the other Metropolitan guards performed their duties. The record indicates that the guards were not allowed in the bar and that they did not wear clothing, like that of the bouncer, that would indicate they were agents or employees of Wild Wild West. Graham testified that he was paid by Dyess, the owner of Metropolitan. Morrison states, as a basis for a finding of an agency relationship, that the supposed manager of Wild Wild West fired Graham on the spot after the incident. However, the record reflects that both Morrison and Graham testified that Dyess fired Graham after the incident. Graham further stated that no one from Wild Wild West had ever told him how to perform his job and that Albert Dyess was the only person who gave him such instructions. Consequently, we must conclude that the jury had before it no evidence from which it could find that Graham was an agent of Wild Wild West.
 VI. Conclusion
The judgment of the Court of Civil Appeals, affirming the trial court's judgment for Morrison, is reversed, and a judgment is rendered for Wild Wild West.
REVERSED AND JUDGMENT RENDERED.
Moore, C.J., and Houston, See, Brown, Johnstone, Harwood, Woodall, and Stuart, JJ., concur.