[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 413 
In May 2000, James Shannon Dickinson, an employee of the City of Huntsville, and Water Pollution Control, Inc., a company of which Dickinson is an officer and in which he is a shareholder, sued Metro Investigations, Inc., Jay Kennedy, an employee *Page 414 
of Metro Investigations, and Loretta Spencer, mayor of the City of Huntsville, alleging that Spencer had improperly hired Kennedy and Metro Investigations to investigate his outside business activities and seeking compensatory and punitive damages.[1] Dickinson claimed that Spencer's failure to properly supervise and review the actions of Kennedy and Metro Investigations "caused [him] to suffer personal humiliation, public embarrassment, [and] financial expense."
Dickinson amended his complaint to allege, among other things, fraud, fraudulent misrepresentation, negligence, and wantonness. Spencer moved the trial court to substitute the City of Huntsville in her place, claiming that "based on the doctrine of governmental function[,] . . . suits brought against governmental officials in their official capacity . . . are, in fact, suits against the governmental agency themselves." The trial court granted Spencer's motion and substituted the City of Huntsville for Spencer.
The City moved for a summary judgment, arguing (1) that Dickinson's claims were barred by the statute of limitations; (2) that Dickinson's fraud claim failed to state a claim upon which relief could be granted; (3) that the testimony given at Dickinson's personnel hearing was privileged and could not be used as a basis for any claim; (4) that Dickinson's claims actually allege malicious prosecution and malicious-prosecution claims may not lie against a municipality; (5) that there is no recognized claim against a municipality for the negligent hiring or supervision of an independent contractor; and (6) that Dickinson cannot recover punitive damages against the City. The trial court granted the City's motion for a summary judgment, finding that Metro Investigations and Kennedy were independent contractors and that, therefore, the City could not be held liable based on a theory of respondeat superior. Dickinson appeals from the trial court's partial summary judgment in favor of the City made final by a certification pursuant to Rule 54(b), Ala.R.Civ.P. Dickinson raises the following issues: (1) whether the trial court erred in substituting the City of Huntsville for Mayor Spencer; (2) whether Metro Investigations was an independent contractor hired by the City of Huntsville; (3) whether a city's surveillance of a city employee was a nondelegable duty; and (4) whether the trial court erred in entering a summary judgment on the issue of damages.
"In reviewing the disposition of a motion for summary judgment, we utilize the same standard as that of the trial court in determining whether the evidence before the court made out a genuine issue of material fact," Bussey v. John Deere Co., 531 So.2d 860, 862 (Ala. 1988), and whether the movant was "entitled to a judgment as a matter of law." Rule 56(c), Ala.R.Civ.P. When the movant makes a prima facie showing that there is no genuine issue of material fact, the burden then shifts to the nonmovant to present substantial evidence creating a genuine issue of material fact. Bass v. SouthTrust Bank of BaldwinCounty, 538 So.2d 794, 797-98 (Ala. 1989). Evidence is "substantial" if it is of "such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the *Page 415 
fact sought to be proved." West v. Founders Life Assurance Co. ofFlorida, 547 So.2d 870, 871 (Ala. 1989). Our review is further subject to the caveat that this Court must review the record in a light most favorable to the nonmovant and must resolve all reasonable doubts against the movant. Hanners v. Balfour Guthrie, Inc., 564 So.2d 412, 413 (Ala. 1990).
Dickinson argues that the trial court erred in substituting the City for the named defendant, Mayor Spencer. He argues that he sued the mayor in her official capacity because, he says, she, as the chief executive officer of the City, is statutorily charged with the supervision and control of the City and its employees. Dickinson relies on Smitherman v.Marshall County Commission, 746 So.2d 1001 (Ala. 1999), for his argument that Spencer, in her official capacity as the mayor, is a distinct legal entity from the City. In Smitherman, Jamie Smitherman, by and through her mother, sued, among others, Marshall County, the Marshall County Commission, and the county engineer, individually and in their official capacities, alleging that they had acted negligently and wantonly in designing and maintaining a county road in Marshall County. Smitherman claimed that their negligence or wantonness had caused a motor-vehicle accident in which she suffered injuries. The trial court entered a summary judgment for all defendants except the County. The trial court, relying on Calvert v. Cullman County Commission, 669 So.2d 119 (Ala. 1995), held that "`suing the county commissioners, in their official capacities, the county engineer, in his official capacity, and the Marshall County Commission is only another way of pleading a claim against the entity, Marshall County.'" 746 So.2d at 1004. This Court reversed the trial court's summary judgment as to the claims against the Marshall County Commission, the commissioners, and the county engineer, holding that there is a legal distinction between a county and its employees acting in their official capacities. 746 So.2d at 1005. This Court also overruled Calvert to the extent that it implied otherwise.Id.
Dickinson urges this Court to adopt the Smitherman rationale and hold that there is a legal distinction between a City and its mayor. Dickinson cites no caselaw to support this argument, and this Court's independent research can find no support for this argument. Smitherman is distinguishable from the present case because of the nature of the parties involved. In Smitherman, this Court quoted Justice Maddox's special writing in Calvert and stated that a county commission "`is thegoverning body of the county, and not the county itself.'" Smitherman, 746 So.2d at 1005. This Court likened a county commission to a city council, because both are governing bodies. Id. The office of mayor, however, is not a governing body in the way a county commission is. The mayor, as Dickinson notes, is the chief executive officer of the City.See § 11-43D-14, Ala. Code 1975. That is to say, she is, in her official capacity, within the line and scope of her office, the agent of the City, through whom the City acts. Thus, to sue the mayor in her official capacity is simply another way of suing the City. Therefore, the trial court did not err in substituting the City for Mayor Spencer, the original defendant.
Dickinson argues that the trial court erred in granting the City's motion for a summary judgment because, he says, Metro Investigations and Kennedy were agents of the City. The City, however, argues that Metro Investigations and Kennedy were not agents of the City, but were instead independent contractors, and we agree. *Page 416 
"`The test for agency is whether the alleged principal has retained a right of control over the actions of the alleged agent.'" Ex parte WildWild West Social Club, Inc., 806 So.2d 1235, 1241 (Ala. 2001) (quotingGist v. Vulcan Oil Co., 640 So.2d 940, 942 (Ala. 1994)). In determining whether a person is an independent contractor, we use the "right-of-control" test, and we consider four factors: (1) direct evidence of the right or exercise of control; (2) the method of payment used; (3) whether the alleged principal had the right to terminate employment; and (4) the right to control another's time. Hooker Constr.,Inc. v. Walker, [Ms. 2000479, Sept. 21, 2001] ___ So.2d ___, ___ (Ala.Civ.App. 2001) (citing Williams v. Tennessee River Pulp PaperCo., 442 So.2d 20 (Ala. 1983)). The party asserting the existence of an agency relationship has the burden of presenting sufficient evidence to prove the existence of that relationship. See Ex parte Wild Wild WestSocial Club, 806 So.2d at 1242 (citing Mardis v. Ford Motor Credit Co.,642 So.2d 701, 704 (Ala. 1994)). Agency may not be presumed. Ex parteWild Wild West Social Club, 806 So.2d at 1242 (citing Carlton v. AlabamaDairy Queen, Inc., 529 So.2d 921 (Ala. 1988)). The plaintiff must present substantial evidence of an agency relationship. Id.
Dickinson failed to present any evidence of an agency relationship. In his response to the City's motion for a summary judgment, Dickinson presented no evidence of agency. To this Court, Dickinson argues that "[n]o evidence was before the trial court from which the trial court could make a factual or legal determination on the employment relations between the City of Huntsville and Metro Investigations, Inc." (Dickinson's brief, at 11.)
Agency cannot be presumed, and Dickinson bears the burden of proving that an agency relationship existed. See Hooker Construction, ___ So.2d at ___. Because Dickinson failed to present substantial evidence indicating the existence of an agency relationship, we cannot say that the trial court erred in finding that Metro Investigations was an independent contractor of the City.
Dickinson argues that the employment of a private investigative agency, Metro Investigations, to conduct surveillance on a city employee was improper, because by doing so it sought to discharge a nondelegable duty. Therefore, Dickinson argues, the City is liable for the negligence of the independent contractor, Metro Investigations. Section 11-47-190, Ala. Code 1975, provides:
 "No city or town shall be liable for damages for injury done to or wrong suffered by any person or corporation, unless said injury or wrong was done or suffered through the neglect, carelessness or unskillfulness of some agent, officer or employee of the municipality engaged in work therefor and while acting in the line of his or her duty. . . ."
(Emphasis added).
Because Metro Investigations was not an agent of the City, the City cannot be held liable under § 11-47-190 for its acts. Moreover, a municipality generally is not liable for the negligence of an independent contractor. Robertson v. City of Tuscaloosa, 413 So.2d 1064, 1066 (Ala. 1982). However, "[a] municipality may be liable for the negligent acts or omissions of its independent contractor if the contractor is performing a nondelegable *Page 417 
duty."[2] Robertson, 413 So.2d at 1066. "A nondelegable duty is usually a specific duty imposed on the municipality by statute." Id. Dickinson argues that §§ 11-43D-14 and 11-43-83, Ala. Code 1975, imposed on Spencer certain nondelegable duties. Section 11-43D-14, provides:
 "The mayor shall be the chief executive officer, and shall have general supervision and control of all other officers, employees and affairs of the city, which shall include the management of the public utilities, either owned and operated by the city or operated by private corporations under contracts with the city. The general law applicable to mayor-council municipalities notwithstanding, the mayor shall have the power to appoint all officers and employees of the city subject to the rules and regulations of any civil service or merit system that may be applicable to said city. The mayor may remove any person appointed by him subject to the rules and regulations of any civil service or merit system that may be applicable to said city."
Section 11-43-83 provides:
 "The mayor shall see that all contracts with the town or city are faithfully kept or performed. [She] shall execute all deeds and contracts and bonds required in judicial proceedings for and on behalf of the city or town and no sureties shall be required on such bond. [She] shall perform such other executive duties, in addition to those prescribed in this article, as may be required of [her] by the council."
Sections 11-43D-14 and 11-43-83 do not impose a specific duty on the municipality, and, therefore, they do not create a nondelegable duty. "A nondelegable duty is usually a specific duty imposed on the municipality by statute." Robertson, 413 So.2d at 1066. "[G]overnmental entities are not ordinarily liable for *Page 418 
the tortious conduct of . . . independent contractors." Baccari v. DeSanti, 70 A.D.2d 198, 203, 431 N.Y.S.2d 829, 832 (1979) (citing O'Brienv. City of Syracuse, 54 A.D.2d 186, 188, 388 N.Y.S.2d 866, 869 (1976); 1A Chester James Antieau, Municipal Corporation Law § 11:04). An exception to the general rule provides that "[w]hen a specific duty has been imposed upon a person or governmental entity by statute, responsibility for misfeasance cannot be avoided by delegating the performance of the duty to an independent contractor." 70 A.D.2d at 203,431 N.Y.S.2d at 833. Accord Robertson, 413 So.2d at 1066.
Sections 11-43D-14 and 11-43-83 reserve certain general, executive powers to the mayor; those powers allow the mayor to conduct the business of the city. That is, these statutes broadly confer on the mayor the authority to make contracts, to hire employees, and to manage the city's day-to-day operations. These statutes do not, as Dickinson argues, create a specific, nondelegable duty.
Finally, Dickinson argues that the trial court erred in entering a summary judgment on the issue of damages. Dickinson argues that the City, through the mayor, was liable for Kennedy's presentation of inaccurate information at the personnel board hearing. Specifically, Dickinson states, "The trial court included as part of its summary judgment order the conclusion that any claim against the City arising from Dickinson's personnel hearing could only be one for malicious prosecution which would not lie against a municipality." (Dickinson's brief at 15.)
Dickinson misreads the trial court's order. The trial court did not address the issue of damages, because the trial court never reached that issue. Instead, the trial court stated several alternative theories for granting the City's motion for a summary judgment. The trial court specifically stated that "[a]lthough not necessary to this decision the court further finds that any claim against the city for the bringing of the personnel [action] could only be considered as a claim for malicious prosecution."
This Court has repeatedly held that "a municipality is not responsible for the acts of its officers, agents, or servants in making false arrests or for instituting a malicious prosecution." Neighbors v. City ofBirmingham, 384 So.2d 113, 113 (Ala. 1980); Ott v. Everett, 420 So.2d 258,260 (Ala. 1982). As we have already held, Metro Investigations and Kennedy were independent contractors hired by the City. If a municipality cannot be responsible for the acts of its agents in a malicious-prosecution action, then certainly a city cannot be liable for the acts of its independent contractors in such an action. We hold that the trial court properly granted the City's motion for a summary judgment. Therefore, we affirm the trial court's summary judgment in favor of the City.
AFFIRMED.
Moore, C.J., and Brown, Harwood, and Stuart, JJ., concur.
[1] Kennedy conducted surveillance on Dickinson from August 1996 until January 1998. Based on the information provided to the City by Kennedy and Metro Investigations, the City filed disciplinary charges against Dickinson. Dickinson was suspended from his job with the City, pending an administrative hearing. The administrative hearing officer held in favor of Dickinson. Dickinson alleges that the City provided false information at the administrative hearing.
[2] A municipality may also be liable for the negligent acts or omissions of its independent contractor if the independent contractor is performing an activity that is inherently dangerous or ultrahazardous.Robertson, 413 So.2d at 1066. An inherently dangerous activity is
 "one which inheres in the performance of the contract and results directly from the work to be done, not from the collateral negligence of the contractor, and important factors to be understood and considered are the contemplated conditions under which the work is to be done and the known circumstances attending it."
Boroughs v. Joiner, 337 So.2d 340, 342 (Ala. 1976).
The employment of a private investigator is not, however, an inherently dangerous or ultrahazardous activity. In Harper v. Regency DevelopmentCo., 399 So.2d 248, 253 (Ala. 1981), this Court, citing the Restatement(Second) of Torts § 520 (1977), set forth the following factors to be considered in determining whether an activity is abnormally dangerous:
 "(a) existence of a high degree of risk of some harm to the person, land or chattels of others;
 "(b) likelihood that the harm that results from it will be great;
 "(c) inability to eliminate the risk by the exercise of reasonable care;
 "(d) extent to which the activity is not a matter of common usage;
 "(e) inappropriateness of the activity to the place where it is carried on; and
 "(f) extent to which its value to the community is outweighed by its dangerous attributes."
This Court has stated that "liability for an abnormally dangerous activity arises out of the intrinsic danger of the ultrahazardous activity itself and the risk of harm it creates to those in the vicinity." Id. Thus, this Court concluded, "The basis for liability is that one who for his own purposes creates an abnormal risk of harm to his neighbors must be responsible for relieving that harm when in fact it does occur." Id. A private investigation, such as that undertaken by Metro Investigations at the direction of the City, is not an activity that carries an inherently high degree of risk. See, e.g., Harper v.Regency Dev. Co., supra (use of high explosives near a populated area is an ultrahazardous activity because reasonable care cannot eliminate the danger inherent in the activity); Boroughs v. Joiner, supra (the aerial application of insecticides and pesticides is intrinsically or inherently dangerous).