THOMAS, Judge.
Forrest McCaughn appeals from the circuit court’s summary judgments in favor of the Alabama State Board for Registration of Architects (“the Board”) and the National Council of Architectural Registration Boards (“NCARB”). We dismiss the appeal in part and affirm the summary judgment in favor of NCARB.

*394
Facts and Procedural History

McCaughn desires to practice architecture in the State of Alabama. The practice of architecture is governed by § 34-2-30 et seq., Ala.Code 1975 (“the Act”). Pursuant to § 34-2-33(b), Ala.Code 1975, the Board has the authority to issue to an applicant a “certifícate of registration as an architect” upon completion of certain requirements. Pursuant to the Act, McCaughn is required to pass an examination in order to receive a certifícate of registration as an architect. Section 34-2-33(a) gives the Board the authority to “contract with an independent testing agency to prepare, grade, or conduct the examination.” In support of its motion for a summary judgment, NCARB presented the affidavit of Erica J. Brown, who is employed by NCARB as its “Director, Architect Registration Examination.” Brown’s affidavit indicated that the Board had contracted with NCARB and that NCARB was authorized by the Board: (1) to administer the Architect Registration Examination (“ARE”), an examination developed by NCARB; (2) to score the exams; and (3) to report the scores to the Board.
NCARB is a nonprofit corporation whose membership consists of the architectural registration boards of all 50 states, the District of Columbia, Guam, Puerto Rico, and the United States Virgin Islands. The ARE has been adopted as the sole licensing examination for architects by all NCARB’s members. NCARB has a board of directors consisting of 14 members; the Board’s executive director has been a member of NCARB’s board of directors since July 2008, and her term will expire in June 2011. NCARB’s policies and procedures, including its testing procedures, are set by majority vote of its board of directors and/or its members. NCARB’s executive staff controls the day-to-day activities of NCARB and reports to NCARB’s board of directors.
The ARE consists of numerous parts known as divisions; those divisions need not be passed at the same time. Since its inception the ARE has been continuously updated. McCaughn first passed a division of the ARE in 1996, at which time the ARE consisted of nine divisions administered in a paper-and-pencil format. In 1997, NCARB transitioned the ARE to be administered via computer. In February 2006, NCARB introduced ARE 3.1. ARE 3.1 consisted of nine divisions, six of the nine divisions were solely comprised of multiple choice questions and the remaining three divisions were solely comprised of graphic vignettes requiring the ARE 3.1 examinee to create solutions using computer-aided design tools.
In August 2004, NCARB announced that it was adopting a “rolling-clock” policy for the ARE, which would go into effect on January 1, 2006. NCARB’s announcement concerning the adoption of the rolling-clock policy stated:
“For applicants who have passed one or more [divisions] but not all of the ARE by January 1, 2006, such applicants shall have five years to pass all remaining divisions. A passing grade for any remaining divisions shall be valid for five years, after which time the division must be retaken if the remaining divisions have not been passed. The five-year period shall commence after January 1, 2006, on the date when the first passed division is administered.”
As of March 2007, McCaughn had passed five of the nine divisions of ARE 3.1. McCaughn had not passed the “Building Technology” division of ARE 3.1, which consisted of six graphic vignettes.
In March 2007, NCARB announced that it had updated the ARE again and that it would begin administering ARE 4.0 on *395 July 1, 2008. Among other changes, ARE 4.0 abolished the Building Technology division of ARE 3.1 and incorporated the graphic vignettes of that division into four other divisions. As a result, an examinee that had not passed the Building Technology division of ARE 3.1 would be required to take four divisions of ARE 4.0 in its place because the graphic vignettes of the Building Technology division of ARE 3.1 had been redistributed among those four separate divisions in ARE 4.0. Therefore, examinees who had passed certain divisions of ARE 3.1 would be retested on some of the same subject matter under ARE 4.0. In fairness to the examinees who had already passed at least one division of ARE 3.1, NCARB allowed those examinees to continue taking ARE 3.1 through June 2009, at which time the ex-aminee would be transitioned to ARE 4.0 if the examinee had not passed all nine divisions of ARE 3.1. NCARB posted all of this information on its Web site in March 2007. NCARB also notified applicants of the transition to ARE 4.0 by direct mailings. In fact, NCARB sent McCaughn five direct mailings concerning the transition to ARE 4.0 between April 4, 2007, and June 4, 2009.
NCARB did not seek or request permission from the Board before making changes to the ARE.
McCaughn failed to pass all nine divisions of ARE 3.1, most notably the Building Technology division, by June 2009, and was transitioned to ARE 4.0. Thus, McCaughn was required to take the four divisions of ARE 4.0 that contained the six graphic vignettes of the Building Technology division of ARE 3.1. This resulted in McCaughn’s being retested on certain subject matter. According to NCARB’s rolling-clock policy and Brown’s affidavit, McCaughn passed a division of ARE 3.1 on November 25, 2008, giving him five years from that date to pass the remaining divisions of the ARE, whether it be ARE 3.1 or ARE 4.0.
In a letter from the Board to McCaughn, dated November 4, 2009, the Board stated:
“The members of the Aabama Board of Achitects met with you on October 21, 2009, to consider questions you have about the NCARB examination and administration policies. You presented options for the Board to consider.
“In response, the Board has reviewed applicable policies and procedures related to administration of the Achitects Registration Examination, the NCARB rolling clock, and the transition from ARE 3.1 to ARE 4.0. Ater review and discussion, it is the Board’s opinion that you had the same access to the ARE and the above policies as any other exam candidate. For this reason, no additional action will be taken by the Board.”
McCaughn filed a declaratory-judgment action against the Board and NCARB on January 28, 2010, seeking an adjudication of his rights under the Act as an applicant to the Board. Specifically, McCaughn alleged that he “should be allowed to satisfy the requirements of ARE version 3.1 within five years of [January 1, 2006,] or within 18 months of this court’s order....” McCaughn also sought an injunction against the Board and NCARB seeking to enjoin them “from modifying or limiting the ‘rolling clock’ for less than a five year period commencing [January 1, 2006].” McCaughn also alleged that NCARB was an agent of the Board.
NCARB filed an answer on March 26, 2010, in which it alleged that McCaughn’s complaint should be dismissed for failure to state a claim upon which relief can be granted. The Board filed a motion to dismiss McCaughn’s complaint pursuant to *396 Rule 12(b), Ala. R. Civ. P., which the trial court denied on March 29, 2010.
On April 1, 2010, NCARB filed a motion for a summary judgment, in which it argued that it is not an agent of the Board and, thus, that it was “not properly named as a defendant.” NCARB further argued that, even if it were a proper defendant, it had not acted “unreasonably, arbitrarily, or capriciously” in changing its policies and procedures.
On April 9, 2010, the Board answered McCaughn’s complaint. On April 13, 2010, the Board filed a motion for a summary judgment arguing that McCaughn had “failed to timely appeal the Board’s decision requiring [McCaughn] to take [ARE 4.0]” and that the Board’s decision to contract with NCARB was not unreasonable, arbitrary, or capricious.
McCaughn filed an opposition to both the Board’s and NCARB’s motions for a summary judgment on June 22, 2010.
The circuit court, without stating its reasons for doing so, granted the Board’s and NCARB’s motions for a summary judgment on June 28, 2010.
On July 27, 2010, McCaughn filed a postjudgment motion pursuant to Rule 59, Ala. R. Civ. P. The circuit court denied McCaughn’s postjudgment motion on July 28, 2010. McCaughn appealed to our supreme court. On September 1, 2010, our supreme court entered an order determining that “this cause is within the appellate jurisdiction of the Court of Civil Appeals” and transferring the cause to this court.

Standard, of Review

“ ‘In reviewing the disposition of a motion for summary judgment, we utilize the same standard as that of the trial court in determining whether the evidence before the court made out a genuine issue of material fact’ and whether the movant was entitled to a judgment as a matter of law. Bussey v. John Deere Co., 531 So.2d 860, 862 (Ala.1988); Rule 56(c), Ala. R. Civ. P. When the movant makes a prima facie showing that there is no genuine issue of material fact, the burden then shifts to the nonmovant to present substantial evidence creating such an issue. Bass v. SouthTrust Bank of Baldwin County, 538 So.2d 794, 797-98 (Ala.1989). Evidence is ‘substantial’ if it is of ‘such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved.’ West v. Founders Life Assurance Co. of Florida, 547 So.2d 870, 871 (Ala.1989).”
Ex parte General Motors Corp., 769 So.2d 903, 906 (Ala.1999). Further,
“[w]hen the trial court does not give specific reasons for entering a summary judgment, we will affirm the judgment if there is any ground upon which the judgment could have been based. Yarbrough v. C & S Family Credit, Inc., 595 So.2d 880, 881 (Ala.1992).”
McCloud v. City of Irondale, 622 So.2d 1272, 1273 (Ala.1993).

Discussion

As a threshold matter, we note that the Board is an agency of the State of Alabama. State By and Through State Bd. for Registration of Architects v. Jones, 289 Ala. 353, 356, 267 So.2d 427, 428 (1972). In Alabama Department of Transportation v. Harbert International, Inc., 990 So.2d 831, 841 (Ala.2008), our supreme court held that “only State officers named in their official-'capacity — and not State agencies — may be defendants in [declaratory-judgment] proceedings.” See also State Bd. of Educ. v. Mullins, 31 So.3d 91, 97 (Ala.2009).
*397 In Alabama Department of Corrections v. Montgomery County Commission, 11 So.3d 189, 191-92 (Ala.2008), our supreme court stated:
“Section 14, Ala. Const. 1901, provides: ‘[T]he State of Alabama shall never be made a defendant in any court of law or equity.’ (Emphasis added.) ‘The wall of immunity erected by § 14 is nearly impregnable.’ Patterson v. Gladwin Corp., 835 So.2d 137, 142 (Ala.2002). Indeed, as regards the State of Alabama and its agencies, the .wall is absolutely impregnable. Ex parte Alabama Dep’t of Human Res., 999 So.2d 891, 895 (Ala.2008) (‘Section 14 affords absolute immunity to both the State and State agencies.’); Ex parte Jackson County Bd. of Educ., 4 So.3d 1099, 1102 (Ala.2008) (same); Atkinson v. State, 986 So.2d 408, 410-11 (Ala.2007) (same); [Ex parte Alabama Dep’t of Transp. (In re Good Hope Contracting Co. v. Alabama Dep’t of Transp.), 978 So.2d 17 (Ala.2007)] (same); Ex parte Alabama Dep’t of Transp., 764 So.2d 1263, 1268 (Ala.2000) (same); Mitchell v. Davis, 598 So.2d 801, 806 (Ala.1992) (same). ‘Absolute immunity’ means just that — the State and its agencies are not subject to suit under any theory.
“ ‘This immunity may not be waived.’ Patterson, 835 So.2d at 142. Sovereign immunity is, therefore, not an affirmative defense, but a ‘jurisdictional bar.’ Ex parte Alabama Dep’t of Transp., 985 So.2d 892, 894 (Ala.2007). The jurisdictional bar of § 14 simply ‘preelud[es] a court from exercising subject-matter jurisdiction’ over the State or a State agency. Lyons v. River Road Constr., Inc., 858 So.2d 257, 261 (Ala.2003).”
Consequently, the Board in the present case is absolutely immune from suit under § 14, Ala. Const. 1901. Harbert, 990 So.2d at 841. The trial court was without jurisdiction over the Board, and the Board is due to be dismissed as a party. Thus, as to the Board, the appeal is dismissed.[1]
Concerning NCARB, McCaughn argues on appeal that NCARB is an agent of the Board. Based on NCARB’s allegedly operating as an agent of the Board, McCaughn appears to argue that NCARB should be treated as a state agency under the Alabama Administrative Procedure Act, § 41-22-1 et seq., Ala.Code 1975 (“the AAPA”). Specifically, McCaughn appears to argue that NCARB’s change in its testing procedures was tantamount to a state agency’s adopting a new “rule,” as defined in § 41-22-3(9), Ala.Code 1975, and that NCARB’s alleged adoption of a new rule did not comply with § 41-22-4(b), Ala. Code 1975, which states:
“No agency rule, order, or decision shall be valid or effective against any person or party nor may it be invoked by the agency for any purpose until it has been made available for public inspection and indexed as required by this section and the agency has given all notices required by Section 41-22-5. This provision is not applicable in favor of any person or party who has actual knowledge thereof, and the burden of proving such knowledge shall be on the agency.”
McCaughn’s legal argument concerning whether NCARB is an agent of the Board is scant. McCaughn argues only that “[a]gency is typically a question of fact. Tuders v. Kell, 739 So.2d 1069 (Ala.1999),” and that “[sjummary judgment on the question of agency was not appropriate.”
In Dickinson v. City of Huntsville, 822 So.2d 411, 416 (Ala.2001), our *398 supreme court set forth the well established test for agency:
“ ‘ “The test for agency is whether the alleged principal has retained a right of control over the actions of the alleged agent.” ’ Ex parte Wild Wild West Social Club, Inc., 806 So.2d 1235, 1241 (Ala.2001) (quoting Gist v. Vulcan Oil Co., 640 So.2d 940, 942 (Ala.1994)).... The party asserting the existence of an agency relationship has the burden of presenting sufficient evidence to prove the existence of that relationship. See Ex parte Wild Wild West Social Club, 806 So.2d at 1242 (citing Mardis v. Ford Motor Credit Co., 642 So.2d 701, 704 (Ala.1994)). Agency may not be presumed. Ex parte Wild Wild West Social Club, 806 So.2d at 1242 (citing Carlton v. Alabama Dairy Queen, Inc., 529 So.2d 921 (Ala.1988)). The plaintiff must present substantial evidence of an agency relationship. Id.”
“Evidence is ‘substantial’ if it is of ‘such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved.’ ” Id. at 414-15 (quoting West v. Founders Life Assurance Co. of Florida, 547 So.2d 870, 871 (Ala.1989)).
On appeal, McCaughn does not point to any evidence indicating that there is a genuine issue of material fact concerning whether an agency relationship existed between the Board and NCARB. The record indicates that NCARB’s policies and procedures concerning the ARE were set by a majority vote of its board of directors and/or its members. There is nothing in the record to indicate that the Board had any influence, apart from its membership in NCARB, over the policies and procedures of NCARB. Our review of the record shows that McCaughn failed to produce substantial evidence indicating that the Board had the control over NCARB necessary to show that an agency relationship existed. Thus, McCaughn has failed to meet his burden of proving that an agency relationship existed between the Board and NCARB. We therefore conclude that the circuit court properly entered a summary judgment in favor of NCARB concerning whether an agency relationship existed between the Board and NCARB.
Based on our holding that the circuit court properly entered a summary judgment in favor of NCARB concerning whether an agency relationship existed between the Board and NCARB, we necessarily conclude that the AAPA does not apply to NCARB and its policies and procedures. Therefore, we need not consider whether NCARB’s adoption of new policies and procedures concerning the ARE complied with § 41-22-4(b) of the AAPA because the AAPA does not apply to NCARB.

Conclusion

Based on the foregoing, we dismiss the appeal in part as to the Board, and we affirm the circuit court’s summary judgment in favor of NCARB.
AFFIRMED IN PART; APPEAL DISMISSED IN PART.
THOMPSON, P.J., and PITTMAN, BRYAN, and MOORE, JJ., concur.

. Because this appeal is being dismissed as to the Board, we will not address McCaughn’s argument in his appellate brief concerning the Board.